United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2006

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 05-40277

KEITH MICHAEL ST. AUBIN,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
(3:02-CV-397)

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Keith Michael St. Aubin contests the denial of habeas relief for his Texas-state-court conviction of, *inter alia*, murder, for which he was sentenced to life imprisonment. Pursuant to our highly deferential standard of review under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA), at issue is whether the following state-habeas decision is unreasonable: St. Aubin's lead trial counsel was *not* ineffective at the trial's punishment phase, for either his

1

investigation of, or decision not to present, mitigating evidence concerning St. Aubin's mental-health history. **AFFIRMED**.

## I.

In February 1998, St. Aubin, then 19 years old and armed with a loaded semi-automatic handgun, attended a street festival in Galveston, Texas. Juan Garcia, who was attending the festival with friends, felt someone push him and turned around to see St. Aubin. A heated verbal argument and scuffle ensued between St. Aubin and Garcia and his friends, ending with St. Aubin shooting the handgun into the crowd, killing one person and injuring four. Witnesses testified they did not observe Garcia or anyone with him possessing or reaching for a weapon.

After the shooting, St. Aubin offered to pay two men to give him a ride. St. Aubin told them he had just shot several people, never mentioning that he feared for his life or that Garcia and his friends had weapons. For safety reasons, the driver took the clip from St. Aubin's handgun while they were in the vehicle. On the way to the destination, the vehicle became stuck; the driver sought the assistance of police officers in the area. When the police found the clip in the driver's pocket, St. Aubin assaulted one of the Officers.

At the trial's guilt/innocence phase, St. Aubin claimed he shot the victims in self-defense, after they surrounded him to attack him. Although St. Aubin had an extensive history of mental-

2

health problems, his lead trial counsel (LTC) did not include them as part of the defense. A jury convicted St. Aubin of one count of murder, four counts of attempted capital murder, and two counts of assault on a public servant.

At the trial's punishment phase, the State presented evidence of St. Aubin's bad reputation and character, including: deputies testified about threats St. Aubin made in jail toward them and his alleged suicide attempts; a fellow inmate testified St. Aubin offered him money to help him execute an escape plan; and St. Aubin's high school coach testified St. Aubin did not have a reputation as a peaceful, law-abiding citizen. St. Aubin's LTC did not call any witnesses. He maintained the shootings were not premeditated but rather the panicked, impulsive reaction of a frightened 19-year-old. In closing, the State argued St. Aubin's failure to present rebuttal witnesses confirmed his malicious character. St. Aubin was sentenced to life for the murder and attempted-murder convictions and ten years confinement for the assault-on-a-public-servant conviction.

On appeal, St. Aubin claimed his LTC had been ineffective at the trial's guilt and punishment phases, by failing to develop and present evidence of St. Aubin's psychiatric conditions, which would have both been relevant to his defense and mitigated his punishment. In rejecting these claims and affirming St. Aubin's conviction and sentence, the intermediate court of appeals held: "Nothing in the record shows counsel's reasons for not offering the

3

[medical] records, which also exposed multiple serious extraneous bad acts. We will not speculate on those reasons". *St. Aubin v. State*, No. 01-98-01318-CR, 2000 WL 675705, at *1 (Tex. App. 25 May 2000). St. Aubin did not file a petition for discretionary review with the Texas Court of Criminal Appeals (TCCA).

St. Aubin filed numerous state-habeas applications. Attached to those applications were St. Aubin's medical records from the Galveston County Jail, West Oaks Psychiatric Hospital, and Dr. Ronald Garb, his treating psychiatrist, and affidavits by the following: Dr. Garb; Dr. Seth Silverman, a forensic psychiatrist who examined and evaluated St. Aubin; Richard Burr, a lawyer and claimed expert in penalty-phase representation; and St. Aubin's mother. The medical records showed hospitalization on two occasions for psychiatric reasons and prescriptions for a number of anti-psychotic medications. Evidence of St. Aubin's mental illness, aggression, isolated acts of violence, and other incidences of anti-social behavior also were discussed in the records, many of which St. Aubin's mother had provided his LTC prior to trial. The state-habeas trial court, without an evidentiary hearing, recommended denial of relief.

The TCCA, however, concluded additional fact finding was required to resolve the claimed ineffective-assistance-of-counsel (IAC). Therefore, it remanded the proceeding to the state-habeas trial court in order to have LTC explain why St. Aubin's mental

4

health, and its impact on his reaction to stress, had not been presented at the trial's punishment phase.

On remand, the state-habeas trial court ordered St. Aubin's LTC to address the IAC claim, including explaining why he did not introduce evidence at the punishment phase showing St. Aubin had prior mental problems that caused him to react in certain ways to stress. In response, St. Aubin's LTC submitted an affidavit in which he: described his "extensive meetings" with St. Aubin and his parents, discussing "all aspects of Mr. St. Aubin's life, background, and family history"; stated he was unaware of any prior mental problems that would cause St. Aubin to react to stress in ways that might explain the shootings; noted the double-edged nature of mental-health evidence, in that it might diminish St. Aubin's blameworthiness but also indicate future dangerousness; described his "strategic decision not to call any witnesses" at the punishment phase; and stated that decision was made in consultation with St. Aubin and his family.

The state-habeas trial court again recommended the denial of habeas relief and made the following factual findings: (1) LTC made a strategic decision not to call any witnesses at the punishment phase to avoid opening the door to prior bad acts and unadjudicated extraneous offenses; (2) although witnesses were available to testify, after consultation with St. Aubin and his family, LTC made a strategic decision not to call witnesses; (3) LTC was unaware "of any evidence 'of prior mental problems causing

5

[St. Aubin] to react in certain ways to stress'" and such evidence was not made known to counsel after extensive consultation with St. Aubin and his family; and (4) if credible, meaningful mental-health evidence had existed, LTC would nevertheless have struggled with the strategic decision whether to present the evidence in mitigation of punishment, for fear it would have been outweighed by the danger of the State's introducing evidence of bad acts and extraneous offenses not previously introduced.

St. Aubin objected to the state-habeas trial court's findings and attached affidavits refuting LTC's. Pursuant to the state-habeas trial court's findings, the TCCA denied St. Aubin's habeas application without written order.

Under 28 U.S.C. § 2254, St. Aubin sought federal habeas relief, with two of his claims being for IAC. The magistrate judge held an evidentiary hearing to determine the extent to which LTC investigated St. Aubin's mental-health history and reasons for not introducing mental-health evidence at the punishment phase, including testimony by LTC clarifying his state-habeas affidavit. LTC testified that affidavit was intended to convey that, while he was aware of St. Aubin's mental-health issues, he did *not* view any of it as mitigating, instead viewing it all as aggravating. Other evidence introduced at the hearing included an audiotaped portion of LTC's conversation with Dr. Garb during the trial-preparation period that contradicted Dr. Garb's state-habeas affidavit that he

6

never discussed St. Aubin's psychiatric history with LTC. Dr. Garb had advised LTC that St. Aubin's psychiatric problems were insufficient to raise an insanity defense because St. Aubin understood the difference between right and wrong.

The magistrate judge's extremely comprehensive report and recommendation stated, *inter alia*: St. Aubin had *not* made the necessary showing for habeas relief on his failure-to-investigate claim — what a proper investigation would have revealed — because he pointed only to information with which LTC was already familiar; and, similarly, LTC's decision not to call witnesses at the punishment phase was *not* unreasonable, and, even if it were, St. Aubin had failed to show the requisite prejudice.

In the light of St. Aubin's objections to that report and recommendation, the district court conducted a *de novo* review. Pursuant to a detailed analysis of the record, it overruled the objections, accepted the report and recommendation, and denied habeas relief. ***St. Aubin v. Dretke***, No. G-02-397 (S.D. Tex. 16 Feb. 2005). Shortly thereafter, by separate order and pursuant to 28 U.S.C. § 2253(c)(2), it granted a certificate of appealability on the issues of whether St. Aubin received IAC based on LTC's: (1) investigation of his mental-health history; and (2) decision not to present evidence of that history at the trial's punishment phase.

II.

7

As noted, AEDPA governs St. Aubin's 28 U.S.C. § 2254 habeas petition. "AEDPA's purpose [is] to further the principles of comity, finality, and federalism". *Williams v. Taylor*, 529 U.S. 420, 436 (2000). In pursuit of these principles, for a "claim that was adjudicated on the merits in State court proceedings", AEDPA allows habeas relief only if "adjudication of the claim--"

> (1) resulted in a decision that was contrary to, or involved an *unreasonable* application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an *unreasonable* determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2) (emphasis added). Accordingly, § 2254(d) permits a federal habeas court "to review only a state court's 'decision,' and not the written opinion explaining that decision". *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1104 (2003).

"A state-court decision is 'contrary to' federal law if it relies on legal principles in direct conflict with prior Supreme Court holdings, or if it reaches a different conclusion than that reached by the Court on materially indistinguishable facts." *Henderson v. Quarterman*, 460 F.3d 654, 659 (5th Cir. 2006). A state-court decision "involves an unreasonable application" where, although "the state court correctly identifies the governing legal principle ... [it] unreasonably applies it to the facts of the

8

particular case". ***Bell v. Cone***, 535 U.S. 685, 694 (2002). Simply an erroneous or incorrect application of federal law is *not* unreasonable; rather, the state-court's application must be objectively unreasonable. ***Rompilla v. Beard***, 545 U.S. 374, 380 (2005).

The state-court's determination of the facts on which it based its decision is "presumed to be correct" in the context of § 2254 (d)(2). The habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

An evidentiary hearing having been held in district court, its findings of fact are reviewed for clear error; its conclusions of law, *de novo*. *E.g.,* ***Collier v. Cockrell***, 300 F.3d 577, 582 (5th Cir.), *cert. denied*, 537 U.S. 1084 (2002). A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole. *E.g.*, ***United States v. Cluck***, 143 F.3d 174, 180 (5th Cir. 1998), *cert. denied*, 525 U.S. 1073 (1999).

For an IAC claim, ***Strickland v. Washington***, 466 U.S. 668 (1984), provides the relevant underlying federal law. To prevail on such a claim *in state court*, St. Aubin had to show: (1) LTC's performance was deficient; and (2) that performance prejudiced his defense. ***Id.*** at 687. Under ***Strickland***'s first prong, St. Aubin had to show *in state court* that his LTC's representation "fell below an objective standard of reasonableness". ***Id.*** at 688.

9

Courts start with the presumption that counsel's conduct falls within the wide range of reasonable professional conduct. *Soffar v. Dretke*, 368 F.3d 441, 471 (5th Cir. 2004). Under the second prong, St. Aubin had to show *in state court* "there is a reasonable probability that, but for his LTC's unprofessional errors, the result of the proceeding would have been different". *Strickland*, 466 U.S. at 694.

As reflected above, a federal court's AEDPA review of a state-court denial of an IAC claim does *not* include determining whether St. Aubin established IAC by satisfying each of *Strickland*'s prongs. *E.g.*, *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004). Rather, it determines whether the state-court decision that St. Aubin did *not* make the requisite IAC showing was contrary to, or an unreasonable application of, clearly-established federal law for succeeding on such a claim. *E.g.*, *Henderson*, 460 F.3d at 655. Along this line, it bears emphasis that, in addition to the TCCA remanding for LTC to file an affidavit in the state-habeas trial court and for further fact finding by that court, St. Aubin had the rare advantage of an evidentiary hearing for his IAC claims in district court.

A.

10

For the first of his two IAC claims, St. Aubin maintains his LTC failed to properly investigate his mental-health history. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary". *Strickland*, 466 U.S. at 691. The reasonableness of the investigation involves "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further". *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). "[A] petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial". *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

St. Aubin contends his LTC's investigation of his mental-illness history, consisting of a five-minute telephone conversation with his psychiatrist (Dr. Garb) and a review of documents submitted by his mother, failed to reveal:  the function of St. Aubin's prescribed medications; a professional explanation of St. Aubin's medical records; and that St. Aubin was suffering from paranoid delusions shortly before he fired his handgun into the crowd.  He relies on affidavits by Drs. Garb and Silverman (the earlier-referenced forensic psychiatrist) to show the specific evidence his LTC would have uncovered had he conducted a proper investigation.  St. Aubin claims prejudice because this information

11

would have given the jury a framework within which to understand his actions and would have shown his illness was treatable.

St. Aubin has *not* established that the state-court decision was unreasonable in finding further investigation by his LTC would *not* have uncovered evidence that would have altered the outcome of the proceeding. The affidavits of Drs. Garb and Silverman support the district court's conclusion that these affidavits do *not* contain mental-health information not already known to LTC and, therefore, are *not* evidence that would have been uncovered by a more thorough investigation.

As established at the district court evidentiary hearing, the evidence known to LTC at trial was substantial. He had reviewed all of St. Aubin's medical records, which included accounts of his psychiatric hospitalizations, read the detailed history of St. Aubin's life submitted by his mother, spoken with St. Aubin's treating psychiatrist, and reviewed St. Aubin's jail records. As a result, LTC knew St. Aubin had been diagnosed as paranoid, had sociopathic traits, understood the difference between right and wrong, and had been prescribed medication for psychosis and depression. Furthermore, St. Aubin's medical history showed he had *not* complied conscientiously with treatment programs and had behaved violently even while undergoing some form of treatment.

According to LTC's testimony at the district-court evidentiary hearing, he was deeply concerned the jury would be more, not less,

12

inclined to consider St. Aubin a future danger if it were provided this information. An attorney who wants to keep damaging information out of a sentencing hearing does *not* act unreasonably by failing to investigate the damaging evidence further. *See* ***Foster v. Johnson***, 293 F.3d 766, 780-81 (5th Cir.) (finding not unreasonable state-court determination that attorney did not conduct inadequate investigation by failing to pursue additional psychological evidence when relevant known evidence was aggravating), *cert. denied*, 537 U.S. 1054 (2002). It was *not* unreasonable for the state court to conclude that any additional information uncovered regarding St. Aubin's mental-health history would *not* have been helpful to the case.

In his state-habeas affidavit, St. Aubin's LTC stated he was unaware of his prior mental problems affecting his reaction to stress. Obviously, that statement is of concern, given the many indications to the contrary. In any event, the district court credited LTC's explanation (testimony) at its evidentiary hearing, and this finding was *not* clearly erroneous. Pursuant to the highly deferential AEDPA standard of review, the state-court decision for this failure-to-investigate claim was *not* unreasonable.

B.

St. Aubin's other IAC claim concerns his LTC's *not* presenting at the trial's punishment phase evidence of his mental-health history in mitigation. "[S]trategic choices made after thorough

13

investigation of law and facts relevant to plausible options are virtually unchallengeable". *Strickland*, 466 U.S. at 690. Moreover, "'[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness'". *United States v. Jones*, 287 F.3d 325, 331 (5th Cir.) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)), *cert. denied*, 537 U.S. 1018 (2002).

Although not all of the additional evidence need be favorable to the petitioner for counsel to have been ineffective for failing to present mitigating evidence, *Williams*, 529 U.S. at 396, "*Strickland* requires ... [courts to] defer to counsel's decision ... not to present a certain line of mitigating evidence when that decision is both fully informed and strategic, in the sense that it is expected, on the basis of sound legal reasoning, to yield some benefit or avoid some harm to the defense". *Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999). Furthermore, "a tactical decision not to pursue and present potentially mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance". *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997), *cert. denied*, 522 U.S. 1120 (1998).

St. Aubin claims his mental-health history was mitigating evidence an attorney would reasonably present to a jury because, in

14

context, the positive characteristics and acts far outweighed the negative. He asserts that, because his arrest and post-arrest behavior was so damaging, his pre-arrest violent incidents would appear insignificant, negating the claimed double-edged nature of the mental-health evidence.

The state-habeas court found, however, that introducing St. Aubin's mental-health history as mitigating evidence would have opened the door for the State to introduce numerous violent incidents which had *not* been introduced during the guilt phase. St. Aubin's medical records reflected episodes of violence directed toward acquaintances and his immediate family, such as fracturing his father's ribs. In addition, the medical records contained evidence that St. Aubin either rejected treatment or continued to behave violently while undergoing treatment for his mental illness, undermining the possibility a jury would find St. Aubin's future dangerousness minimal. In this regard, the prosecutor testified at the district-court evidentiary hearing that, had St. Aubin's LTC introduced his mental-health history, he would have used it to emphasize St. Aubin's violent character and failed treatment efforts.

The district court accepted LTC's and his co-counsel's testimony at the district-court evidentiary hearing that considerable thought and discussion went into the decision *not* to present mitigating evidence during the punishment phase. This and

15

its following related findings were *not* clearly erroneous. The district-court's finding that LTC's decision was based on a professionally informed and competent assessment of St. Aubin's mental-health history, and thus fell "within the wide range of reasonable professional assistance", supports its concluding that the state-court denial of the failure-to-present-evidence claim was *not* unreasonable. **Strickland**, 466 U.S. at 689. *See* **Riley v. Dretke**, 362 F.3d 302, 306 (5th Cir. 2004) (even in capital case, counsel's not presenting evidence of mental retardation as mitigating evidence is reasonable in order to prevent negative jury finding on issue of future dangerousness), *cert. denied*, 543 U.S. 1056 (2005). Pursuant to the highly deferential AEDPA standard of review, the district court's conclusion was *not* erroneous.

## III.

For the foregoing reasons, the denial of habeas relief is

*AFFIRMED*.