United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 06-70034

))))))))))))))))))))))))))))

GERALD JAMES HOLLAND

Petitioner-Appellant

v.

JAMES V. ANDERSON, Superintendent,
Mississippi State Penitentiary

Respondent-Appellee

---

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:98-CV-0562

---

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before the court is a motion for issuance of a certificate
of appealability ("COA") filed by Petitioner Gerald James Holland
("Holland"), who was convicted in Mississippi of capital murder
during the course of a rape and subsequently sentenced to death.
In his motion, Holland raises five issues that he asserts should
be heard by this court.  For the following reasons, we GRANT a

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

COA with respect to Holland's claim that he was not permitted to introduce rebuttal evidence at his re-sentencing.  We deny a COA on the remainder of the issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 1986, Holland was indicted by a grand jury in Harrison County, Mississippi, for murdering fifteen-year-old Krystal D. King while "engaged in the commission of the crime and felony of Rape . . . ."  Venue was transferred to Adams County, Mississippi, where Holland was tried before a jury in November and December 1987.  Following the twelve-day trial, the jury convicted Holland of capital murder, making Holland eligible for the death penalty.  See MISS. CODE ANN. § 97-3-19(2)(e) (2006) (defining capital murder to include murder while engaged in the commission of the crime of rape); § 97-3-21 (authorizing death penalty for those convicted of capital murder).  Immediately after the jury returned its guilty verdict, the judge sent the jury out of the room so he could discuss with the attorneys how the penalty phase would proceed.  Approximately twenty-two minutes later, the jury sent out a note stating, "We, the jury, sentence Gerald James Holland to death."  The judge then admonished the jury to refrain from deliberations, and the penalty phase proceeded with the same jury.  At the conclusion of the sentencing phase, the jury sentenced Holland to death.

On direct appeal, the Mississippi Supreme Court affirmed

Holland's conviction, but reversed the death sentence on the ground that the jury's premature deliberations regarding the death penalty had prejudiced Holland. Holland v. State, 587 So. 2d 848, 872-74 (Miss. 1991) (Holland I). Holland was then re-sentenced by a new jury ("the re-sentencing jury"). On April 3, 1993, that jury also sentenced Holland to death, and the Mississippi Supreme Court upheld the sentence on direct appeal. Holland v. State, 705 So. 2d 307, 357 (Miss. 1997), cert. denied, 525 U.S. 829 (1998) (Holland II).

Prior to seeking post-conviction relief in Mississippi state court, Holland filed a pro se application for stay of execution and a motion for appointment of counsel with the United States District Court for the Southern District of Mississippi in December 1998. The district court granted both motions, but stayed further action in Holland's case, pending the exhaustion of his state court remedies. Holland then filed a petition for post-conviction relief with the Mississippi Supreme Court, which the court denied. Holland v. State, 878 So. 2d 1, 10 (Miss. 2004), cert. denied, 544 U.S. 906 (2005) (Holland III).

After Holland III was announced, the district court lifted the stay and Holland filed an amended petition for writ of habeas corpus[1] in which he raised twelve claims for habeas relief. In a thorough opinion, the district court denied the amended petition

---

[1] There was no "original" petition for habeas corpus relief in this case other than Holland's initial pro se filings.

3

and subsequently denied Holland's request for a certificate of appealability. Holland then filed the instant motion for certificate of appealability with this court, raising five issues. We now address his claims.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2253, a petitioner such as Holland has no absolute entitlement to appeal the district court's denial of his petition for writ of habeas corpus. Miller-El v. Cockrell, 537 U.S. 322, 335 (2003). Rather, he must first seek and obtain a certificate of appealability ("COA") from a circuit justice or judge on the issues he desires to appeal. 28 U.S.C. § 2253(c)(1). This is a jurisdictional requirement without which this court lacks the authority to hear the merits of Holland's appeal. See Miller-El, 537 U.S. at 336.

A COA may issue only when a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); Foster v. Quarterman, 466 F.3d 359, 364 (5th Cir. 2006), petition for cert. filed, __ U.S.L.W. __ (U.S. Jan. 24, 2007)

4

(No. 06-9253).

A COA determination requires an overview of the claims in the habeas petition and a general assessment of their merits. Miller-El, 537 U.S. at 336. However, this threshold inquiry does not require full consideration of the factual or legal bases of the claim, nor does it require a showing that the appeal will succeed. Id. at 336-37; see also Foster, 466 F.3d at 364 (noting that the court is limited to a "threshold inquiry" into the underlying merit of the claims). Rather, the petitioner must only demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack, 529 U.S. at 484.

In making this threshold inquiry, we are mindful of the deference owed to state court decisions in habeas cases which, like this one, are subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Post-AEPDA, federal courts assessing a petition for writ of habeas corpus from a state prisoner must defer to the state court's resolution of those claims, with few exceptions. See 28 U.S.C. § 2254(d); see also Foster, 466 F.3d at 365. Deference is mandated both for questions of law and for mixed questions of law and fact, unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Hill v. Johnson, 210 F.3d 481, 485

5

(5th Cir. 2000). A state court's decision is "contrary to" clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's decision involves an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case. Id. at 413.

Deference is also required unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Pursuant to AEDPA, the state court's factual findings are presumed correct unless rebutted by clear and convincing evidence. Id. § 2254(e)(1); Foster, 466 F.3d at 365.

While Holland need not prove that his appeal would succeed under the AEDPA standard in order to receive a COA, see Miller-El, 537 U.S. at 337, we recognize that the district court's consideration of his claims (as well as our analysis in the event we grant a COA) is limited by the deference mandated under AEDPA. With that standard in mind, we turn to Holland's motion for a COA.

6

## III. DISCUSSION

## A. Denial of Fair and Impartial Jury at Guilt/Innocence Phase

Holland first asserts that he was denied the right to a fair and impartial jury at the guilt/innocence phase of his trial because (1) the coroner stated in the presence of some venire members that Holland should be "strung up;" and (2) venire members were "joking" that they should convict Holland so they could go home. The State argues, and the district court held, that Holland did not exhaust this claim before the state court as required under 28 U.S.C. § 2254(b). Because his habeas claim was denied on exhaustion grounds, we may not issue a COA unless Holland demonstrates that "'jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Ruiz v. Quarterman, 460 F.3d 638, 642 (5th Cir. 2006), cert. denied, __ S. Ct. __, 2007 WL 789132 (Mar. 19, 2007) (quoting Slack, 529 U.S. at 484).

Pursuant to § 2254(b)(1), an application for writ of habeas corpus shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State . . . ."[2] A

---

[2] ADEPA excuses the exhaustion requirement if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights" of the petitioner. 28 U.S.C. § 2254(b)(1). No such allegations have been made in this case.

7

petitioner has not exhausted his state court remedies if "he has the right under the law of the State to raise, by any available procedure, the question presented." Id. § 2254(c). Federal courts retain the power, however, to deny a petition on its merits even in the absence of state court exhaustion. Id. § 2254(b)(2).

In order to exhaust his claim in state court, Holland must have "fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (citations and quotation marks omitted). In other words, Holland must have presented the state court with the same facts and legal theories upon which he bases his current assertions. See Ruiz, 460 F.3d at 643.

Turning to Holland's claim that he was not given a fair and impartial jury during the guilt/innocence phase of his trial (as opposed to the original sentencing or re-sentencing phases), the only state court pleading in which that claim was arguably raised is Holland's direct appeal of his conviction and initial death sentence. His first argument in that direct appeal was that the trial court erred when it refused to grant a mistrial after learning that the jurors had deliberated on punishment prior to the sentencing phase. As the evidentiary basis for his claim, Holland described how the jury sent out the note sentencing him to death before the sentencing phase even took place. Although he did not specify that he was referring only to the sentencing

8

phase of his trial, he did not reference or include any facts that would suggest his argument pertained to the guilt/innocence phase, as well.

That Holland's first direct appeal was only directed at the impartiality of the jury during the sentencing phase is born out in later briefing. In response to the direct appeal, the State argued as if Holland was only challenging the impartiality of the jury during the sentencing phase. In reply, Holland did not argue that the State misunderstood the scope of his claim but, again, only referenced the jury's deliberations on his sentence.

In sum, Holland has not directed this court to any pleading or argument that he made before the state court that the jury was not fair and impartial during the guilt/innocence phase of his trial. Further, we have found no reference to the specific evidentiary basis for his argument here--the comments of the coroner and the "joking" of the venire members--in any of his state court briefing. As a result, we can only conclude that reasonable jurists would agree that Holland did not exhaust this claim before the state court. See Ruiz, 460 F.3d at 643 (stating that exhaustion requires that "all the grounds of the claim be first and 'fairly represented' to the state courts").

We further conclude, as did the district court, that reasonable jurists would agree that Holland's claim is also procedurally barred. When a petitioner has failed to exhaust a claim in state court, and that failure would now also result in

9

the state procedurally rejecting that claim, the petitioner has procedurally defaulted on the claim and it is barred.[3] Id. (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). Exceptions to the procedural bar exist when the petitioner can show "cause and actual prejudice" or that the bar will result in a "fundamental miscarriage of justice." Id. "Cause" requires a showing that an external force prevented the petitioner from complying with the state's procedural rules, while a "miscarriage of justice" requires a colorable showing of factual innocence. Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004).

Here, under Mississippi law in effect at the time the Mississippi Supreme Court ruled on Holland's direct appeal of his re-sentencing, an application for post-conviction collateral relief must have been made within three years after conviction. MISS. CODE ANN. § 99-39-5(2).[4] Conviction is defined as the date that the mandamus pertaining to a direct appeal is issued. See Puckett v. State, 834 So. 2d 676, 677-78 (Miss. 2002). The mandamus for Holland's second and last direct appeal was issued in February 1998, well over three years ago, meaning Mississippi

---

[3] Absent a procedural bar, a petitioner could conceivably return to state court and attempt to exhaust his remedies. See, e.g., Fuller v. Johnson, 158 F.3d 903, 905-06 (5th Cir. 1998) (holding that court was not required to dismiss unexhausted claim without prejudice because it was procedurally barred).

[4] Section 99-39-5(2) has since been amended to require that motions for post-conviction relief in capital cases be filed within one year of conviction.

courts would find his claim barred by limitations.  Holland has made no attempt to demonstrate that his claim is not procedurally barred or that he falls within one of the exceptions.  As a result, reasonable jurists would find it beyond debate that Holland's jury impartiality claim is now barred by limitations.

Holland also argues that his claim that the guilt/innocence jury was not fair and impartial is "a structural defect in the trial mechanism" that permits review of his claim regardless of exhaustion.  It is unclear whether Holland intends this argument to fit somewhere in the AEDPA analysis or whether he believes it is independent from AEDPA and requires reversal of conviction regardless of his compliance with AEDPA.  Either way, his argument lacks merit.

The Supreme Court has divided constitutional errors into two categories--"trial errors" and "structural defects."  United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2563-64 (2006).  Trial errors occur during the presentation of the case to the jury and are subject to the harmless error analysis.  Id.  Structural defects, however, "defy analysis by harmless-error standards because they affect the framework within which the trial proceeds . . . ."  Id. at 2364 (internal citations, quotation marks, and modifications omitted); see also Burgess v. Dretke, 350 F.3d 461, 471 (5th Cir. 2003) (stating structural defects infect the entire trial process).  Structural errors include denial of counsel, denial of the right to self-representation,

11

denial of the right to public trial, and denial of an impartial decisionmaker. Gonzalez-Lopez, 126 S. Ct. at 2564 (denial of counsel, self-representation, and public trial); Virgil v. Dretke, 446 F.3d 598, 607 (5th Cir. 2006) (denial of impartial decisionmaker).

Assuming arguendo that Holland's claim of the denial of a fair and impartial jury is a structural defect that would require reversal, we must consider whether Holland has demonstrated that his jury at the guilt/innocence phase was not fair and impartial. As noted above, Holland focuses on two events during voir dire: (1) the local coroner telling several venire members that Holland should be "strung up;" and (2) several venire members joking that they should convict Holland so they could go home. We consider each in turn.

Review of the record shows that, after it was discovered that the coroner had made his comments in the presence of several venire members, the trial court asked the venire members if any of them had heard the coroner's comments. Only venire member Marion responded that he had heard the coroner's comments.[5] Marion also stated that he had read a recently published article in the newspaper regarding the case, as had many venire members. The trial court subsequently dismissed all the venire members who had read the newspaper article. Therefore, Marion did not serve

---

[5] At least two other venire members saw the coroner but did not hear what the coroner said.

12

on the jury, and there is no evidence that the coroner's comments were heard by or relayed to any member of the jury. Consequently, this incident is not sufficient to show that the jury was not fair and impartial. See United States v. Davis, 393 F.3d 540, 549 (5th Cir. 2004) (noting that juries are presumed to be impartial, absent evidence to the contrary).

Turning to Holland's other argument, it was revealed during voir dire that venire member Mitchell had joked that perhaps they should vote to convict the defendant so they could all go home. At the time Mitchell's comments came up in voir dire, Mitchell had already been stricken for cause, having read a newspaper article on the crime and formed an opinion. Holland points to no evidence in the transcript that any of the venire members who heard the joke ended up on the jury and somehow were influenced by Mitchell's comments. Again, this is an insufficient showing to demonstrate a structural defect in the trial mechanism that would warrant a new trial on the ground that the jury was not fair and impartial. As a result, we decline to issue a COA on Holland's first claim.

**B.    Prosecutor's Use of Peremptory Challenges During Selection of Re-Sentencing Jury**

Holland next alleges that the State's use of its peremptory challenges to exclude jurors with misgivings about the death penalty violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Holland specifically identifies venire members

13

Bradley and Tammen as having been excused by the State through its peremptory challenges.  During voir dire, Bradley stated she had strong reservations about the death penalty and was unsure whether she could vote for it.  Tammen stated she was "not crazy about dealing with the death penalty."  Holland's counsel did not object to the State's use of peremptory challenges on these venire members at the time.

The State makes three arguments in response: (1) Holland failed to exhaust this contention in state court; (2) Holland waived this claim by failing to object at trial; and (3) the Mississippi Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  We choose to address this claim under the State's third argument.  See 28 U.S.C. § 2254(b)(2) (stating the court may deny a habeas petition even if it has not been exhausted).

Because Holland did not object to the State's use of peremptory challenges on Bradley and Tammen at the time, we can only speculate as to whether the State struck them for their views on the death penalty or for unrelated reasons.  Regardless, this court has "'consistently held that in capital cases peremptory challenges may be used to exclude those [prospective jurors] who express hesitancy about imposing the death penalty but whose exclusion for cause is forbidden by Witherspoon.'"[6]

---

[6] Witherspoon is the Supreme Court case Witherspoon v. Illinois, in which the Court held that it is permissible to

14

Andrews v. Collins, 21 F.3d 612, 628 (5th Cir. 1994); see also

Sonnier v. Maggio, 720 F.2d 401, 406 (5th Cir. 1983) (stating

that the exercise of peremptory challenges does not implicate

Witherspoon).  As a result, even if the State struck Bradley and

Tammen for their hesitancy regarding the death penalty, such a

decision would be permissible under our precedent.

Holland cites no case law to the contrary.  The only binding

Supreme Court authority he cites deals either with challenges for

cause under Witherspoon, see Adams v. Texas, 448 U.S. 38, 47-48

(1980), or the use of peremptory challenges on the basis of race,

see Powers v. Ohio, 499 U.S. 400, 411 (1991), neither of which

contradicts our prior precedent noted above.  As a result,

Holland has not met his burden of demonstrating a substantial

showing of the denial of a constitutional right.  See 28 U.S.C.

§ 2253(c)(2).  Therefore, we deny a COA on this issue.

## C.    Denial of Fair and Impartial Jury at Re-Sentencing

Holland next claims that he was denied the right to a fair

and impartial jury at his re-sentencing in violation of the

Fifth, Sixth, Eighth, and Fourteenth Amendments.  Specifically,

Holland claims that the jury was affected by "prejudicial

---

exclude jurors for cause when they make unmistakably clear "(1)
that they would automatically vote against the imposition of
capital punishment without regard to any evidence that might be
developed at the trial of the case before them, or (2) that their
attitude toward the death penalty would prevent them from making
an impartial decision as to the defendant's guilt." 391 U.S. 510,
522 n.21 (1968).

15

extraneous facts and information not introduced into evidence"
when several venire members admitted to prior knowledge of the
case and one venire member stated he was in agreement with
Holland's first sentence.  The State contends that Holland's
arguments are either unexhausted or lack merit.

We begin with the initial presumption that a jury is
impartial.  United States v. Ruggiero, 56 F.3d 647, 652 (5th Cir.
1995).  This presumption, however, may be rebutted and prejudice
may be shown by evidence that extrinsic factual matter tainted
the jury's deliberations.  Id.  A court must investigate any
asserted impropriety when "a colorable showing of extrinsic
influence appears . . . ."  United States v. Martinez, 151 F.3d
384, 394 (5th Cir. 1998); Ruggiero, 56 F.3d at 652.

Here, Holland points to the statements of several venire
members made in front of the entire panel to support his claim
that extrinsic evidence influenced the jury.  Venire members
Barney and Hall both stated they had a fixed opinion about the
case and could not be impartial.  Venire members Carrier, Tammen,
and Scarbrough all stated that they remembered the case, but none
of them was selected for the jury.  Juror Larson also stated she
remembered the case and would start the case thinking the death
penalty was appropriate; however, upon further questioning, she
stated that she could set her opinion aside and follow the law.
She was not challenged by Holland and served on the re-sentencing
jury.

16

Holland further places great emphasis on the statement of venire member Joseph during voir dire. Joseph, a deputy sheriff, stated he had some professional knowledge of the case and could not be impartial. Joseph then stated, "I was in complete agreement with the first sentence that he got and feel-" at which point counsel objected. Joseph was excused for cause.

In sum, the "extrinsic evidence" introduced to the jury was that (1) some people had heard of the case before; (2) some people had fixed opinions about the case; and (3) at least one person agreed with the initial sentence, although there was no indication of what that sentence was.[7] Reasonable jurists would not find that this is a "colorable showing" that extrinsic evidence actually tainted the jury's deliberations. See United States v. Leahy, 82 F.3d 624, 630 n.6 (5th Cir. 1996) (rejecting claim of outside influence on jury because there was no colorable showing of influence). As stated by the Supreme Court, "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the

_____

[7] In Romano v. Oklahoma, the Supreme Court held that it was not impermissible to introduce evidence that the defendant had been sentenced to death in another case. 512 U.S. 1, 13-14 (1994). Although not directly on point with the facts here, it does lend support to the State's position that no improper influence occurred when jurors were made aware that Joseph agreed with the "first sentence."

17

juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." <u>Dobbert v. Florida</u>, 432 U.S. 282, 302 (1977) (internal quotations marks omitted).  Without a showing of extrinsic influence, reasonable jurists would not find debatable Holland's claim that the re-sentencing jury was not fair and impartial.  Therefore, we deny a COA on this issue.

## D.   Inability to Rebut Evidence at Re-Sentencing

Holland next asserts that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when he was not allowed to rebut the State's evidence at his re-sentencing that he murdered King while engaged in the commission of the crime of rape.  Holland claims that, at the re-sentencing and in order to show an aggravating circumstance under Mississippi law, the State put on evidence that he raped and killed King, but that he was not allowed to put on evidence to the contrary.[8]  The State argues that Holland should not be allowed to relitigate the issue of his guilt at his re-sentencing, as it is res judicata, and that recent Supreme Court precedent forecloses Holland's claim. See <u>Oregon v. Guzek</u>, 546 U.S. 517, 126 S. Ct. 1226 (2006).

Analysis of this issue requires a brief overview of Mississippi's capital sentencing system.  Holland was charged with and found guilty of capital murder under Mississippi law,

---

[8]  It appears that Holland primarily wished to challenge the finding that he raped King prior to killing her.

18

which provides that murder committed while engaged in the commission of the crime of rape is capital murder.  MISS. CODE ANN. § 97-3-19(2)(e).  Individuals found guilty of capital murder are eligible for the death penalty.  Id. § 97-3-21.  The procedure for sentencing in a death penalty case is described in section 99-19-101.  In order to sentence an individual to death, the jury must unanimously find the following:

> (a) That sufficient factors exist as enumerated in subsection (7) of this section;
>
> (b) That sufficient aggravating circumstances exist as enumerated in subsection (5) of this section; and
>
> (c) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances.

Id. § 99-19-101(3).

Subsection (7) requires the jury to find the defendant actually killed, attempted to kill, intended that a killing take place, or contemplated that lethal force would be used.  Id. § 99-19-101(7).  Subsection (5) lists eight aggravating circumstances, three of which were argued in this case: (1) the capital offense was committed while the defendant was engaged in the commission of a rape; (2) the capital offense was committed for the purpose of avoiding or preventing a lawful arrest; and (3) the capital offense was especially heinous, atrocious, or cruel.  Id. § 99-19-101(5).  Here, the jury found that all three aggravating factors had been proven by the State.

As should be evident from the above discussion, the fact

19

that Holland murdered King while engaged in the act of the commission of the crime of rape is both an element of the guilt/innocence finding on the capital murder charge and an aggravating circumstance militating toward imposition of the death penalty. It is this dual function that raises a constitutional question in this case.

In Holland II, the Mississippi Supreme Court addressed Holland's claim that he should be allowed to put on evidence at his re-sentencing to rebut the State's evidence, also used at Holland's re-sentencing, that he killed King while committing the crime of rape. 705 So. 2d at 320-29. The court held that Holland was not allowed to put on such evidence because the issue of his guilt as to the crimes of rape and murder was res judicata at the re-sentencing phase. Id. at 323-24. The court also held that, although Mississippi permits a capital defendant to argue residual or whimsical doubt, Holland had no constitutional right to put on evidence in support of such a doubt. Id. at 324-26. Three justices dissented in Holland II on this issue. They argued that Holland had a right to rebut any and all evidence used against him at the re-sentencing hearing. Id. at 358-60 (Prather, J., dissenting).

The United States Supreme Court has held that "[t]he Due Process Clause does not allow the execution of a person 'on the basis of information which he had no opportunity to deny or explain.'" Simmons v. South Carolina, 512 U.S. 154, 161 (1994)

20

(plurality) (quoting <u>Gardner v. Florida</u>, 430 U.S. 349, 362 (1977)). Holland asserts that the trial court's prohibition on his rebuttal evidence violated this rule of law. In essence, Holland was not allowed to challenge one of the aggravating circumstances the State used to argue that the death penalty was appropriate. The lack of rebuttal evidence makes it much more likely that a jury would find that the State met its burden with respect to that aggravating circumstance. We believe reasonable jurists would find the resolution of this argument debatable.

In its opinion on Holland's amended petition for writ of habeas corpus, the district court in this case found the Supreme Court's decision in <u>Oregon v. Guzek</u>, 546 U.S. 517, 126 S. Ct. 1226 (2006), dispositive as to Holland's claim.[9] In <u>Guzek</u>, the Supreme Court held that, in a sentencing proceeding in a death penalty case, a state may limit the defendant's introduction of innocence-related evidence to that evidence that was used in the guilt/innocence phase of the trial. 126 S. Ct. at 1228. Prompting the appeal in <u>Guzek</u> was Guzek's desire to introduce new alibi evidence at his re-sentencing after he was convicted of capital murder. <u>Id.</u> at 1229. While Oregon law permitted Guzek to introduce innocence-related evidence from the guilt/innocence phase, it did not allow for the introduction of new innocence-

---

[9] Because <u>Guzek</u> was not issued until after the Mississippi Supreme Court ruled on Holland's appeals, that court did not have the opportunity to examine the effect of <u>Guzek</u> on Holland's claim.

related evidence at the re-sentencing phase.  OR. REV. STAT. § 138.012(2)(b) (2003).

While part of the rationale in <u>Guzek</u> supports the State's position in this case, there are several key distinctions that cause us to want to consider the issue in more detail.  First, one of the circumstances listed by the Supreme Court as persuasive in its decision was that the Oregon statute permitted Guzek to put on innocence-related evidence that had been used at the guilt/innocence phase.  <u>Id.</u> at 1233.  The Court stated that this fact minimized the negative impact of the rule prohibiting the introduction of new innocence-related evidence.  <u>Id.</u>  That circumstance, however, is absent in Holland's case, as the trial court did not permit any evidence challenging Holland's guilt, regardless of whether it was introduced in the guilt/innocence phase.  Second, there do not appear to have been any overlapping issues between the guilt/innocence phase and the re-sentencing phase in <u>Guzek</u>.  Here, as noted above, both the guilt/innocence jury and the re-sentencing jury were asked to find, and did find, that Holland killed King while committing the crime of rape.  Consequently, while <u>Guzek</u> is instructive, it is not binding in this instance.

"While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor."  <u>Ramirez v. Dretke</u>, 398 F.3d 691,

694 (5th Cir. 2005) (internal citations and quotation marks omitted). We believe reasonable jurists would find this issue debatable and that Holland "deserve[s] encouragement to proceed further." See Miller-El, 537 U.S. at 336 (internal quotation marks omitted). Therefore, we grant a COA on this issue.

**E. Ineffective Assistance of Counsel at Re-Sentencing**

Finally, Holland argues that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated when he received ineffective assistance of counsel during his re-sentencing. The State argues that some of Holland's ineffective assistance claims are meritless and that some were not exhausted.

In order to demonstrate that his counsel was ineffective, Holland must show that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); St. Aubin v. Quarterman, 470 F.3d 1096, 1101 (5th Cir. 2006), petition for cert. filed, __ U.S.L.W. __ (U.S. Feb. 19, 2007 (No. 06-9680). Under the first prong, Holland must show that his counsel made errors so serious that he was no longer functioning as "counsel" under the Sixth Amendment. Strickland, 466 U.S. at 687. To meet this test, counsel's performance must fall below an objective standard of reasonableness. St. Aubin, 470 F.3d at 1101. Under Strickland's second prong, Holland must demonstrate that there is a reasonable probability that, but for his

counsel's unprofessional errors, the result of the proceeding would have been different.  Id.  Again, while Holland need not prove that his counsel was actually ineffective under the Strickland standard in order to receive a COA, he must at least demonstrate that reasonable jurists would find the issue debatable.  See Miller-El, 537 U.S. at 336.

The specific instances identified by Holland as demonstrating an ineffective assistance of counsel are:

- Failing to properly raise the issue that Holland's right to testify and present a closing argument was "chilled" when the state court disallowed rebuttal testimony;

- Failing to create a record of prejudice when counsel did not ask the trial judge to question the venire members after Joseph's statement regarding his agreement with Holland's first sentence;

- Failing to object to "certain prosecutorial misconduct" during the cross-examination of Dr. Zimmerman;

- Failing to object to prosecutorial comments regarding Holland's failure to testify;

- Failing to object to the prosecutor's misstatements of the law; and

- Failing to object to the prosecutor's expression of his personal feelings and opinions.

In his motion for COA, Holland simply lists these issues. He does not brief them, cite to portions of the record, or cite to any precedent indicating that the Mississippi state courts erred in their determination of his ineffective assistance claim. Typically, issues that are not briefed are waived.  Parr v.

24

Quarterman, 472 F.3d 245, 253 (5th Cir. 2006), petition for cert. filed, __ U.S.L.W. __ (U.S. Mar. 7, 2007) (No. 06-1086) (citing Yohey v. Collins, 985 F.3d 222, 224-25 (5th Cir. 1993)); Summers v. Dretke, 431 F.3d 861, 881 n.12 (5th Cir. 2005), cert. denied, 127 S. Ct. 353 (2006).  In this instance, however, by not adequately briefing these issues, Holland has not met his burden of demonstrating the substantial denial of a constitutional right, which is required before we may issue a COA.  See 28 U.S.C. § 2253(c)(2).

Considering Holland's claims, we note that the first issue-- failing to raise the chilling of Holland's right to testify--is unexhausted, having never been raised before the Mississippi state courts.  For the reasons discussed in Section III.A, supra, this claim is not only unexhausted, but also procedurally barred.

With respect to Holland's claim that his counsel failed to object to the prosecutor's comments on Holland's failure to testify, the Mississippi state court determined that the prosecutor's comments were not improper.[10]  Holland II, 705 So. 2d at 344-45.  Holland has made no attempt to argue that this ruling was incorrect.  As a result, he cannot show that his counsel's performance in failing to object to the prosecutor's

---

[10]  Although his motion for COA does not specify what the prosecutor said, review of Holland II shows Holland was concerned with the prosecutor's statement that the forensic evidence was without question and that the "witness to the rape was killed and that's Krystal."  Holland II, 705 So. 2d at 344.

25

comments was deficient, as the prosecutor's comments were not objectionable.  See Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

The remainder of the issues Holland raises in his ineffective assistance of counsel claim also do not meet the standard for issuance of a COA.  Other than a conclusory statement, Holland makes no argument that counsel's performance fell below an objective standard of reasonableness or that, had counsel's performance not been deficient, the outcome of the proceeding would have been different.  There is a strong presumption in favor of counsel's competency.  Martinez v. Dretke, 404 F.3d 878, 885 (5th Cir. 2005).  "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." United States v. Holmes, 406 F.3d 337, 361 (5th Cir. 2005) (internal quotation marks omitted).  Holland has clearly not met his burden of demonstrating the substantial denial of a constitutional right with respect to his ineffective assistance of counsel claim.  We, therefore, deny a COA on this issue.

## IV. CONCLUSION

For the reasons above, we GRANT a COA on the single issue of whether Holland's rights were violated at his re-sentencing when he was not permitted to rebut the State's evidence that he killed

26

King while engaged in the commission of the crime of rape. We DENY a COA on all of Holland's other claims. The Clerk of Court will set out a briefing schedule for the single issue on which we granted a COA.