**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 18, 2009

Charles R. Fulbruge III
Clerk

No. 06-70034

GERALD JAMES HOLLAND

Petitioner-Appellant

v.

JAMES V ANDERSON, SUPERINTENDENT, MISSISSIPPI STATE
PENITENTIARY

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before WIENER, STEWART, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Petitioner Gerald James Holland ("Holland") appeals the district court's order denying him habeas corpus relief from his Mississippi conviction for capital murder and sentence of death. Holland raised five issues in his motion for a Certificate of Appealability ("COA"), and we granted a COA on "the single issue of whether Holland's rights were violated at his resentencing when he was not permitted to rebut the State's evidence that he killed [Krystal] King while engaged in the commission of the crime of rape," as the jury found during the guilt phase of his trial. *Holland v. Anderson*, 230 F. App'x 374, 386 (5th Cir.

2007) (per curiam). For the following reasons, we AFFIRM the district court's denial of habeas corpus relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In its opinion denying Holland's Amended Petition for Writ of Habeas Corpus, the district court provided a detailed account of the factual background and procedural history of this case. *See Holland v. Anderson*, 439 F. Supp. 2d 644, 649-53 (S.D. Miss. 2006). Below, we focus upon only those facts most relevant to the instant appeal.

On November 17, 1986, a grand jury in Harrison County, Mississippi, indicted forty-nine-year-old Holland for murdering fifteen-year-old Krystal D. King ("King") "while engaged in the commission of the crime and felony of Rape." After a transfer of venue, the State tried Holland before a jury in November and December 1987. Following a twelve-day trial, the jury found Holland guilty of capital murder, thus making Holland eligible for the death penalty. *See* MISS. CODE ANN. § 97-3-19(2)(e) (defining capital murder to include murder while "engaged in the commission of the crime of rape"); § 97-3-21 (authorizing the death penalty for those convicted of capital murder). Immediately after the jury returned its guilty verdict, the judge sent the jury out of the room so he could discuss with the attorneys how the penalty phase would proceed. Approximately twenty-two minutes later, the jury sent out a note stating, "We, the jury, sentence Gerald James Holland to death." The judge then admonished the jury to refrain from deliberations, and the penalty phase proceeded with the same jury. At the conclusion of the sentencing phase, the jury recommended—and the court imposed—a sentence of death.

On Holland's first direct appeal, the Mississippi Supreme Court affirmed Holland's conviction but reversed his death sentence on the ground that the jury's premature sentencing deliberations violated his Sixth Amendment right to a fair and impartial jury. *Holland v. State (Holland I)*, 587 So. 2d 848, 872-75

(Miss. 1991). The court remanded the case for resentencing by a new jury (the "resentencing jury"). *Id.* at 875.

On remand, the trial court concluded that, because the original jury—by virtue of finding Holland guilty of murder during the commission of a rape—found that Holland raped King (and this conviction had been affirmed on appeal), Holland could not deny the rape during his resentencing proceeding. *See Holland v. State (Holland II)*, 705 So. 2d 307, 327 (Miss. 1997), *cert. denied*, 525 U.S. 829 (1998). The court ruled that Holland could introduce mitigating evidence and describe the circumstances of the rape and murder, but he could not argue that he did not rape King. *See id.*

The court also submitted to the jury three aggravating factors to consider: "(1) that the capital offense was committed while the defendant was engaged in the act of commission of the crime of rape, (2) that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest, and (3) that the capital offense was especially heinous, atrocious, or cruel." *Id.* at 319. He further "submitted to the jury the determination of whether Holland actually killed Krystal D. King, or attempted to kill her, or intended that the killing take place, or contemplated that lethal force would be employed." *Id.*; *see* MISS. CODE ANN. § 99-19-101(7)(a-d); *Enmund v. Florida*, 458 U.S. 782, 797 (1982).

Pursuant to Mississippi procedure, the state recalled five witnesses who testified during the guilt phase of Holland's trial. *See Jackson v. State*, 337 So. 2d 1242, 1256 (Miss. 1976) ("At this hearing, the State may elect to stand on the case made at the first hearing, if before the same jury, or may reintroduce any part of the evidence adduced at the first hearing which it considers to be relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment."), *superseded by statute on unrelated grounds as recognized by Gray v. State*, 351 So. 2d 1342, 1349 (Miss. 1977). Among these witnesses was Dr. McGarry, the State's pathologist, who testified

3

that King had been raped and explained the heinous manner in which she had been murdered. Holland proffered the testimony of his own pathologist, Dr. Riddick, to rebut Dr. McGarry's testimony. The record indicates that the court would have permitted Dr. Riddick to dispute Dr. McGarry's testimony about the "especially heinous, atrocious or cruel" aggravating circumstance; the court only would have prohibited him from contesting the original jury's finding that Holland in fact raped King. Holland, however, elected not to call Dr. Riddick.[1] Although Holland called multiple witnesses to testify on his behalf, including his mother, brother, a psychiatrist, and one of the state's witnesses, he chose not to testify himself, allegedly because he could not deny the occurrence of the rape, even though he could have testified to the facts and circumstances thereof in mitigation. At the conclusion of the resentencing proceeding, the jury found the existence of all three aggravating factors and "that Holland actually killed Krystal King, intended to kill and contemplated that lethal force would be employed." *Holland II*, 705 So. 2d at 319. It sentenced Holland to death. *Id*.

On Holland's second direct appeal, the Mississippi Supreme Court affirmed his sentence. *Id*. at 357.[2] Prior to seeking post-conviction relief in Mississippi state court, in December 1998, Holland filed a *pro se* application for a stay of execution and a motion for appointment of counsel in the U.S. District Court for the Southern District of Mississippi. The district court granted both motions, but it stayed further action in Holland's case pending the exhaustion of his state court remedies. Holland then filed a petition for post-conviction relief with the Mississippi Supreme Court, which the court denied. *Holland v.*

---

[1] Holland did not present any expert evidence from a pathologist during the guilt phase of his original trial. The record reflects that Holland chose not to call his original pathologist, Dr. Steckler, during the guilt phase of his trial because he (Dr. Steckler) agreed with Dr. McGarry's conclusion that King was raped.

[2] Three Mississippi Supreme Court Justices dissented. *See Holland II*, 705 So. 2d at 358-60 (Prather, J., dissenting).

*State (Holland III)*, 878 So. 2d 1, 10 (Miss. 2004), *cert. denied*, 544 U.S. 906 (2005).

After the Mississippi Supreme Court decided *Holland III*, the district court lifted the stay and Holland filed an amended petition for a writ of habeas corpus[3] in which he raised twelve claims for habeas relief. In a thorough opinion, the district court denied the amended petition and subsequently denied Holland's request for a COA. *See Holland*, 439 F. Supp. 2d 644. Holland then sought a COA from this court on five issues. *Holland*, 230 F. App'x at 375. We granted a COA on the single issue currently before us and denied a COA on each of Holland's other claims. *Id*. at 386.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal under 28 U.S.C. § 2253(a) and (c)(1)(A) because the district court issued a final order denying Holland habeas relief and we granted him a COA. *See Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008).

"On habeas review, we review the district court's findings of fact for clear error and its legal conclusions *de novo*." *Mallard v. Cain*, 515 F.3d 379, 381 (5th Cir. 2008). Our review of Holland's amended petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which mandates that federal courts give great deference, subject to limited exceptions, to the state courts' resolution of a petitioner's claims. *See Foster v. Quarterman*, 466 F.3d 359, 365 (5th Cir. 2006). This "deference is mandated both for questions of law and for mixed questions of law and fact." *Id*. Under AEDPA, a federal court cannot grant habeas relief unless the state court adjudication of a claim either

---

[3] There was no "original" petition for habeas corpus relief in this case other than Holland's initial pro se filings. Holland's Application for Stay of Execution and his Motion for Appointment of Counsel, filed on December 15, 1998, initiated this case.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "Under § 2254(d)(1), a decision is contrary to clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent].'" *Oliver v. Quarterman*, 541 F.3d 329, 334 (5th Cir. 2008) (quoting *(Terry) Williams v. Taylor*, 529 U.S. 362, 405 (2000)) (alterations in original), *cert. denied*, 129 S. Ct. 1985 (2009). "A decision involves an unreasonable application of Supreme Court precedent if it 'unreasonably extends a legal principle from [Supreme Court precedent] to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id.* (quoting *Williams*, 529 U.S. at 407) (alteration in original). We must presume that the state court's factual findings are correct unless Holland meets his "'burden of rebutting [that] presumption . . . by clear and convincing evidence.'" *Foster*, 466 F.3d at 365 (quoting 28 U.S.C. § 2254(e)(1)) (alteration and omission in original).

## III. ANALYSIS

Holland asserts that the trial court violated his constitutional rights by prohibiting him from rebutting, at his resentencing trial, the State's evidence that he murdered King while engaged in the commission of a rape. He claims that, because the State, to prove an aggravating circumstance under Mississippi law, put on evidence that he raped King, it was constitutional error to prevent him from putting on evidence to show that he did not rape King prior to killing

6

her. The State contends that the court properly prevented Holland from disputing that he raped King because the issue was res judicata based on the original jury's finding that Holland murdered King "while engaged in the commission of the crime of rape." The State argues that this was not error and, further, that the Supreme Court's decision in *Oregon v. Guzek*, 546 U.S. 517 (2006), forecloses Holland's claim.

This appeal implicates the following issues: (1) whether the resentencing court improperly prohibited Holland from introducing evidence of the *circumstances* of his crime as mitigating evidence, (2) whether Holland was entitled to present evidence of innocence of his crime of conviction at his resentencing, and (3) the effect of rape being both an element of Holland's crime of conviction *and* an aggravating circumstance. We address each in turn. Before analyzing these issues, however, we first briefly review the structure of Mississippi's capital sentencing scheme.

## A.    Mississippi's Capital Sentencing Scheme

Mississippi law provides for bifurcated trials for capital offenses. *See* MISS. CODE ANN. § 99-19-101(1). First, if a jury convicts a defendant of capital murder during the guilt phase of the trial, the defendant is rendered death-eligible. *See id.* § 97-3-21. According to Mississippi law, the offense of capital murder includes "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of rape." *Id.* § 97-3-19(2)(e). Thus, the commission of the crime of rape is an element of capital murder under this subsection.

If a person is convicted of capital murder, "the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life

imprisonment." *Id.* § 99-19-101(1). To impose a sentence of death, the jury must unanimously find:

> (a) That sufficient factors exist as enumerated in subsection (7) of this section;
>
> (b) That sufficient aggravating circumstances exist as enumerated in subsection (5) of this section; and
>
> (c) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances.

*Id.* § 99-19-101(3). Subsection (7) requires the jury to find that the defendant actually killed, attempted to kill, intended that a killing take place, or contemplated that lethal force would be employed. *Id.* § 99-19-101(7). Subsection (5) lists eight aggravating circumstances, of which the court submitted three to the resentencing jury in this case: (1) "[t]he capital offense was committed while the defendant was engaged . . . in the commission of . . . rape"; (2) "[t]he capital offense was committed for the purpose of avoiding or preventing a lawful arrest"; and (3) "[t]he capital offense was especially heinous, atrocious or cruel." *Id.* § 99-19-101(5). Subsection (6) lists various mitigating circumstances not relevant to this appeal. *See id.* § 99-19-101(6).

In this case, the jury in Holland's original trial found him guilty of capital murder for killing King while engaged in the commission of the crime of rape, and this conviction was upheld on appeal. At resentencing, the second jury found that all three aggravating circumstances existed, that there were insufficient mitigating circumstances to outweigh the aggravating circumstances, and that Holland actually killed King, intended to kill, and contemplated that lethal force would be employed. Accordingly, the jury recommended—and the court imposed—a sentence of death.

As this discussion makes clear, and as our previous opinion granting Holland a COA explained, "the fact that Holland murdered King while engaged

in the act of the commission of the crime of rape is both an element of the guilt/innocence finding on the capital murder charge and an aggravating circumstance militating toward imposition of the death penalty. It is this dual function that raises a constitutional question in this case." *Holland*, 230 F. App'x at 383.

**B.  The Trial Court Did Not Improperly Prohibit Holland from Introducing Evidence of the *Circumstances* of His Crime As Mitigating Evidence**

Holland's primary argument on appeal is that, by prohibiting him from contesting that he raped King, the resentencing court denied him "his due process right to present evidence of the circumstances of the offense as a basis for a sentence less than death." The State does not challenge the premise that Holland had the constitutional right to introduce evidence of the circumstances of his capital crime for the resentencing jury to consider as mitigation. Rather, the State contends that the evidence Holland sought to introduce was not evidence of the *circumstances* of his capital crime. We agree.

**1.  The Effect of *Lockett*, *Eddings*, and Their Progeny**

In *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion), the Supreme Court addressed which facets of an offender or his offense are deemed "relevant" to mitigation in capital sentencing and "what degree of consideration of 'relevant facets'" is required. In that case, the Court entertained a challenge to an Ohio death penalty statute that "narrowly limit[ed] the sentencer's discretion to consider the circumstances of the crime and the record and character of the offender as mitigating factors." *Id.* at 589. The statute limited the sentencer to considering only three mitigating factors: whether "(1) the victim had induced or facilitated the offense, (2) it was unlikely that [the defendant] would have committed the offense but for the fact that []he 'was under duress, coercion, or strong provocation,' or (3) the offense was 'primarily

the product of [the defendant's] psychosis or mental deficiency." *Id.* at 593 (quoting OHIO REV. CODE §§ 2929.03-.04(B) (1975)). The Ohio statute precluded any consideration of any other facts or circumstances in mitigation. *See id.*

Evaluating the constitutionality of this capital sentencing regime, a plurality of the Court noted that "'in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.'" *Id.* at 604 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion)). Chief Justice Burger, writing for the plurality, concluded that

> the Eighth and Fourteenth Amendments require that the sentencer, . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

*Id.* at 604. In *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982), a majority of the Supreme Court adopted this rule, which is now well-established. *See Skipper v. South Carolina*, 476 U.S. 1, 4 (1986).

In adopting this rule, the *Eddings* Court explained that "the fundamental respect for humanity underlying the Eighth Amendment" requires such consideration "as a constitutionally indispensable part of the process of inflicting the penalty of death." 455 U.S. at 112. In addition, the Court has explained that "[e]qually clear is the corollary rule that the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence." *Skipper*, 476 U.S. at 4 (internal quotation marks omitted). As the Supreme Court recently summarized, "[i]n aggregate, our precedents confer upon defendants the right to present sentencers with [such mitigating] information relevant to the sentencing decision and oblige sentencers to consider that information in

determining the appropriate sentence. The thrust of our mitigation jurisprudence ends here." *Kansas v. Marsh*, 548 U.S. 163, 175 (2006).

Notably, the evidence that Holland sought to present at his resentencing in this case is distinctly different from that at issue in *Lockett* and *Eddings*. As the Supreme Court has recently recognized, *Lockett* and *Eddings* each involved traditional sentence-related evidence: "evidence that tended to show *how*, not *whether*, the defendant committed the crime." *Oregon v. Guzek*, 546 U.S. 517, 524 (2006). In *Lockett*, the defendant sought to introduce evidence which, inter alia, showed he had a favorable prognosis for rehabilitation and that he had suffered from drug addiction but was receiving treatment and was "on the road to success," but the Ohio statute precluded its consideration in mitigation. 438 U.S. at 594. Similarly, in *Eddings*, the trial court refused to consider in mitigation the circumstances of the defendant's unhappy upbringing, including his turbulent family history and beatings by a harsh father, and his severe emotional disturbance. 455 U.S. at 116.[4]

Importantly, the trial court in this case did not prevent Holland from introducing such evidence. At his resentencing, the jury heard mitigating evidence from Holland's mother and brother, who testified that Holland had a difficult upbringing and that his alcoholic father physically and mentally abused him. Dr. Marc Zimmerman, a psychologist who examined Holland prior to his resentencing trial, testified that although Holland possessed an average or normal intellectual level, he nonetheless suffered from some brain dysfunction.

---

[4] In *Skipper*, the Court addressed the specific situation in which a prosecutor argues, as a factor warranting imposition of the death penalty, that the defendant "would pose disciplinary problems if sentenced to prison and would likely rape other prisoners." 476 U.S. at 3. In such a case, the Court held that, to rebut this testimony, the defendant had the right to introduce evidence of his good behavior in prison while awaiting trial even though such evidence did "not relate specifically to [the defendant's] culpability for the crime he committed." *Id.* at 4-5. Indeed, although not related specifically to the circumstances of the crime of conviction, such might be the only way a defendant could rebut the prosecutor's assertion.

Holland further called William Boyer, one of the state's witnesses, who testified that King was at Holland's home on the night of the murder because she had asked to be taken there. Moreover, the court did not prevent Holland from testifying: the resentencing court made clear that it would have allowed Holland to testify about any of the circumstances of his crime and any aspect of his character or record as mitigation. Nor did the court prevent Holland from calling his pathologist, Dr. Riddick, to rebut State pathologist Dr. McGarry's testimony about the "especially heinous, atrocious or cruel" nature of the crime. The only testimony and evidence that the court prohibited was that related to an *element* of the crime: the commission of a rape. As explained above, rape was an essential element of the original jury's capital murder conviction. Without finding rape, the jury could not have found Holland guilty of capital murder; rape was therefore not a *circumstance* of the crime.[5] The only witness that the court precluded Holland from calling was Dr. Canfield, a serologist who Holland sought to call for the sole purpose of testifying that King had not been raped.[6] The fact that Holland sought to introduce evidence to dispute an actual element of his crime of conviction—not merely evidence to *explain* the crime or to describe the *circumstances* of the crime—distinguishes this case from *Lockett*, *Eddings*, and their progeny.

## 2. The Effect of *Oregon v. Guzek*

---

[5] As an illustration, consider non-capital murder. Had Holland been charged only with the non-capital murder of King, and had he also raped her, the rape would be a circumstance of the crime of murder (the killing of King). Capital murder in this case, however, required murder *plus* rape; rape was an essential element of the crime, not a circumstance thereof.

[6] Dr. Canfield would have testified that he found no acid phosphates on a vaginal swab taken from King or sperm on a slide taken from her rape kit. Of course, as the State notes in its brief, such a finding, even if made, would not establish that King had not been raped because under Mississippi law, as elsewhere, rape requires only penetration of the vagina—no matter how slight—not ejaculation.

12

In *Oregon v. Guzek*, 546 U.S. 517 (2006), the Supreme Court addressed the rule of *Lockett*, *Eddings*, and their progeny and confronted a virtually identical question as in this case based on virtually identical facts and procedure. The Court decided *Guzek* after the Mississippi Supreme Court denied Holland habeas relief, and the district court found it dispositive of Holland's claim. Its holding is also central to the State's argument. Accordingly, we explain the case at some length.

In *Guzek*, the Supreme Court held that, in a resentencing proceeding in a capital case, a state can constitutionally limit a defendant's introduction of innocence-related evidence to the evidence he introduced at his original trial. *See* 546 U.S. at 523. A jury convicted Guzek of capital murder in an Oregon court and sentenced him to death. *Id.* at 520. The Oregon Supreme Court affirmed his conviction but vacated his sentence and ordered a new sentencing proceeding. *Id.* A jury again sentenced Guzek to death, but the Oregon Supreme Court again vacated his sentence and remanded. *Id.* A jury sentenced Guzek to death yet again, and the Oregon Supreme Court again vacated his sentence. *Id.* "Seeking to avoid further errors at the next (the fourth) sentencing proceeding, the Oregon Supreme Court also addressed the admissibility of certain evidence Guzek [sought] to introduce at that proceeding," namely, new alibi evidence (that he did not offer at his original trial) tending to show that he could not have committed the capital murder of which the original jury had found him guilty. *Id.* Although Oregon law permitted Guzek to introduce innocence-related evidence from the guilt phase of his trial at resentencing, it did not allow him to introduce *new* innocence-related evidence. *See* OR. REV. STAT. § 138.012(2)(b). Guzek sought to introduce evidence of the latter type: evidence that "is *inconsistent* with Guzek's prior conviction," "sheds no light on *the manner* in which he committed the crime for which he ha[d] been convicted," and is not "evidence that Guzek contends was unavailable to him at

the time of the original trial." *Guzek*, 546 U.S. at 523. The Supreme Court concluded that it could "find nothing in the Eighth or Fourteenth Amendments that provides a capital defendant a right to introduce new evidence of this kind at sentencing." *Id.*

Notably, the Court specifically distinguished *Guzek* from *Lockett* and *Eddings* on the ground that the evidence in *Guzek* was inconsistent with Guzek's prior conviction:

> But the evidence at issue in [*Lockett* and *Eddings*] was traditional sentence-related evidence, evidence that tended to show *how*, not *whether*, the defendant committed the crime. Nor was the evidence directly inconsistent with the jury's finding of guilt.

*Id.* at 524. The Court further explained that a defendant's Eighth Amendment right to present evidence in mitigation of sentence is not unlimited:

> The Eighth Amendment also insists that a sentencing jury be able to consider and give effect to mitigating evidence about the defendant's character or record or the circumstances of the offense. But the Eighth Amendment does not deprive the State of its authority to set reasonable limits upon the evidence a defendant can submit, and to control the manner in which it is submitted. Rather, States are free to structure and shape consideration of mitigating evidence in an effort to achieve a more rational and equitable administration of the death penalty.

*Id.* at 526 (citations and internal quotation marks omitted).

In support of its conclusion, the court explained three circumstances which, taken together, convinced it that a state could exclude evidence of the type Guzek sought to present:

> First, sentencing traditionally concerns *how*, not *whether*, a defendant committed the crime. *See* United States Sentencing Commission, Guidelines Manual § 1A1.1, editorial note, § 4(a), p. 4 (Nov. 2004). But the evidence at issue here—alibi evidence—concerns only *whether*, not *how*, he did so.
>
> Second, the parties previously litigated the issue to which the evidence is relevant—whether the defendant committed the basic

crime. The evidence thereby attacks a previously determined matter in a proceeding at which, in principle, that matter is not at issue. The law typically discourages collateral attacks of this kind. *Cf. Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication[.]").

Third, the negative impact of a rule restricting defendant's ability to introduce *new* alibi evidence is minimized by the fact that Oregon law gives the defendant the right to present to the sentencing jury *all* the evidence of innocence from the original trial regardless. That law permits the defendant to introduce at resentencing transcripts and exhibits from his prior trial. ORE. REV. STAT. § 138.012(2)(b) (2003). The defendant here has not claimed that the evidence at issue was unavailable at the time of his original trial. Thus, he need only have introduced it at that time to guarantee its presentation (albeit through transcripts) to a resentencing jury as well.

The legitimacy of these trial management and evidentiary considerations, along with the typically minimal adverse impact that a restriction would have on a defendant's ability to present his alibi claim at resentencing convinces us that the Eighth Amendment does not protect defendant's right to present the evidence at issue here. We conclude that the Oregon court was wrong in holding to the contrary.

*Id.* at 526-27.

The district court in the instant case found *Guzek* dispositive:

Based on the holdings in *Guzek*, this Court finds that the trial court in Holland's re-sentencing trial did not constitutionally err by barring introduction of evidence suggesting that Holland did not murder King *while in the act of raping her*. That evidence relates to whether Holland committed the crime for which he was convicted, not how the crime was committed. Further, barring the introduction of this evidence did not prevent Holland from introducing other evidence of mitigating circumstances enumerated in § 99-19-101(6) of the Mississippi Code.

*Holland*, 439 F. Supp. 2d at 673-74 (emphasis added).

15

We agree that the Supreme Court's holding in *Guzek* suggests that Holland was not entitled to introduce evidence indicating that he did not rape King. Of the three circumstances the *Guzek* Court identified as supporting the assertion that a State may prohibit the introduction of new evidence of innocence at resentencing, two are directly applicable here. First, the Court noted that "sentencing traditionally concerns *how*, not *whether*, a defendant committed the crime." *Guzek*, 546 U.S. at 526. Just like the alibi evidence in *Guzek*, the evidence and testimony that Holland did not rape King, which Holland unsuccessfully sought to present at resentencing "concerns only *whether*, not *how*, he [committed his crime of conviction]." *See id.* Second, the *Guzek* Court explained that "the parties previously litigated the issue to which the evidence [that Guzek sought to introduce at resentencing] is relevant—whether [he] committed the basic crime," which is "a previously determined matter." *Id.* The same is true here. By virtue of his capital murder conviction, a jury found that Holland raped King, and the issue was actually litigated and necessary to the judgment of conviction.

Only the third circumstance identified by the *Guzek* Court does not apply in this case: whereas an Oregon statute expressly allows a defendant "to present to the sentencing jury all the evidence of innocence from the original trial," Mississippi does not have a comparable statute. *See id.* at 526-27 (emphasis omitted).[7] However, the importance of this third circumstance is not clear. In

---

[7] The State argues that "[u]nder Mississippi case law and procedure a capital defendant and the state are generally allowed to reintroduce any evidence adduced at the guilt/innocence phase in the sentence phase or resentencing phase." In support, it cites the Mississippi Supreme Court's decision in *Bell v. State*, 360 So. 2d 1206, 1211-12 (Miss. 1978), and subsequent cases, most of which rely upon *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976), *superseded by statute on unrelated grounds as recognized by Gray v. State*, 351 So. 2d 1342, 1349 (Miss. 1977). Although the *Bell* court noted that the defendant "moved to reaffirm" his testimony at resentencing, it did not hold that the defendant has a right to reintroduce evidence adduced during the guilt-innocence phase in the sentencing or resentencing phase. *See Bell*, 360 So. 2d at 1211-12. *Jackson* and its progeny address only *the State's* right to

16

his concurrence in *Guzek*, Justice Scalia questioned the Court's inclusion of this third circumstance in its analysis:

> The first two of the circumstances are alone sufficient to dispose of the claim that the Eighth Amendment guarantees a capital defendant a second opportunity, at sentencing, to litigate his innocence. In fact, the Court's third "circumstance" is an analytical misfit in the company of the other two. The first two—that "sentencing traditionally concerns *how*, not *whether*, a defendant committed the crime," and that "the parties previously litigated the issue to which the evidence is relevant"—show that compelling the admission of innocence-related evidence would be *improper* and *unnecessary* at a sentencing hearing. The third, by contrast, suggests that there is no constitutional violation in this case because *enough* of such evidence may be admitted on remand. The latter factor would be relevant only if the former two were not.

*See id.* at 528 (Scalia, J., concurring in the judgment) (citations omitted). Moreover, at least two circuit courts have cited *Guzek*'s holding that a defendant has no right to present new evidence of innocence at sentencing without mentioning this "third circumstance." *See Owens v. Guida*, 549 F.3d 399, 419 (6th Cir. 2008); *Shelton v. Carroll*, 464 F.3d 423, 442 (3d Cir. 2006) (explaining that "because [the defendant] did not testify at trial, any factual statements about what happened on the night of the murder and his involvement in the crime would have been new evidence not already in the trial record," and therefore holding that the state court's refusal to permit the defendant to testify to such facts at allocution was not an unreasonable application of *Lockett* or any other clearly established federal law). Thus, even though only two of the three considerations that the *Guzek* Court identified as underlying its holding are present in this case, this does not render *Guzek* inapplicable.

Importantly, almost all of the evidence that Holland sought to present at resentencing is exactly the type of *new* evidence of innocence described in *Guzek*.

---

reintroduce such evidence. No case that the State cites specifically holds that a defendant has a similar right.

Holland assigns error to the resentencing court's refusal to let him call his pathologist, Dr. Riddick, to rebut Dr. McGarry's testimony that King had been raped.[8] However, Holland never called a pathologist at trial. He elected not to do so because his pathologist at the time, Dr. Steckler, agreed with Dr. McGarry's conclusion that King had been raped. Moreover, Holland chose not to testify during the guilt phase of his trial. Thus, any testimony from Holland that the rape did not occur (as opposed to testimony regarding the circumstances of the rape), would constitute new evidence inconsistent with the jury's guilty verdict. *See Shelton*, 464 F.3d at 442 ("[B]ecause [the defendant] did not testify at trial, any factual statements about what happened on the night of the murder and his involvement in the crime would have been new evidence not already in the trial record.").[9] The only witness who testified during the guilt phase who the court prohibited Holland from recalling was Dr. Canfield, and Holland does not specifically challenge his exclusion on appeal. Regardless, as explained above, *see supra* note 6, Dr. Canfield would have merely testified that he found no acid phosphates on a vaginal swab taken from King or sperm on a slide taken from her rape kit. This testimony could not have demonstrated that a rape did not occur. Accordingly, the exclusion of Dr. Canfield's testimony, if error, was harmless. *See Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Oliver*, 541 F.3d at 340-44

---

[8] Holland suggests in his brief that the court prohibited him from calling Dr. Riddick altogether. However, this is not true. As explained above, *see supra* Section I, the court would have permitted Holland to call Dr. Riddick to dispute Dr. McGarry's testimony regarding the nature of King's injuries to rebut the "especially heinous, atrocious, or cruel" aggravating circumstance. The only fact that he could not contest was that Holland raped King, which the guilt-phase jury had previously found.

[9] We recognize that the rule in *Shelton* would appear to create a perverse incentive for a defendant when determining whether to testify during the guilt phase of his trial, potentially in violation of the Fifth Amendment. However, the decision in *Shelton*, based on *Guzek*, shows—at the very least—that there is no clearly established federal law that would *permit* a defendant to offer such new evidence during the resentencing phase.

(finding a constitutional error harmless under the *Brecht* standard on habeas review).

As we noted when granting Holland a COA, however, *Guzek* is not *completely* on all fours with this case: in addition to the difference in Oregon and Mississippi law, "there do not appear to have been any overlapping issues between the guilt/innocence phase and the re-sentencing phase in *Guzek*." *Holland*, 230 F. App'x at 384. Notwithstanding these dissimilarities, the holding in *Guzek*—and its supporting reasoning—demonstrates that Holland does not have the right to present evidence at resentencing that is inconsistent with the verdict of the guilt-phase jury. At the very least, in light of these cases, the Mississippi Supreme Court's denial of Holland's claim "was not contrary to or an unreasonable application of *Lockett* or any other clearly established federal law as determined by the Supreme Court." *See Shelton*, 464 F.3d at 442-43.

**C.   The Trial Court Did Not Impose Holland's Death Sentence on the Basis of Information He Had No Opportunity to Deny or Explain**

Holland argues that the trial court, at resentencing, violated his due process rights by imposing a death sentence on the basis of information that he had no opportunity to deny or explain. In support, Holland relies on two plurality decisions of the Supreme Court: *Gardner v. Florida*, 430 U.S. 349 (1977) (plurality opinion), and *Simmons v. South Carolina*, 512 U.S. 154 (1994) (plurality opinion). In *Gardner*, a jury found the defendant guilty of the capital murder of his wife, and in a separate sentencing proceeding expressly found that the mitigating circumstances outweighed the aggravating circumstances and therefore recommended a sentence of life imprisonment. 430 U.S. at 352-53. However, the trial judge, who was the ultimate sentencer at the time, considered a presentence report containing confidential information not disclosed to the defense, and, on the basis of information in the report, sentenced the defendant to death. *Id.* at 353. The Supreme Court reversed, with a plurality concluding,

apparently broadly, "that [the defendant] was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Id.* at 362. However, as the State notes, Justice White's concurring opinion provided the narrowest ground for decision among the Justices who voted to reverse and is therefore controlling. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." (internal quotation marks omitted)). Justice White expressly declined to rely on the Due Process Clause and found that "[a] procedure for selecting people for the death penalty which permits consideration of such secret information relevant to the 'character and record of the individual offender'" violates the Eighth Amendment. *Gardner*, 430 U.S. at 364 (White, J., concurring in the judgment).

In *Simmons*, a jury found the defendant guilty of the capital murder of an elderly woman. 512 U.S. at 157. During the sentencing phase, the prosecution argued that the defendant's future dangerousness was a factor warranting imposition of a death sentence. *Id.* Notwithstanding evidence suggesting that the jury would likely believe that a life sentence would allow for the possibility of parole, the court refused to allow the defendant to inform the jury that, if sentenced to life imprisonment, he would be ineligible for parole. *Id.* at 158-60. The plurality quoted the *Gardner* plurality's statement that "[t]he Due Process Clause does not allow the execution of a person 'on the basis of information which he had no opportunity to deny or explain.'" *Id.* at 161 (quoting *Gardner*, 430 U.S. at 362). However, its holding was much narrower: "[W]here the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id.* at 156. Moreover, Justice

20

O'Connor's opinion is the controlling opinion, as it provides an even narrower ground of decision:

> When the State seeks to show the defendant's future dangerousness, however, the fact that he will never be released from prison will often be the only way that a violent criminal can successfully rebut the State's case. I agree with the Court that in such a case the defendant should be allowed to bring his parole ineligibility to the jury's attention . . . as a means of responding to the State's showing of future dangerousness.

*Id.* at 177 (O'Connor, J., concurring in the judgment).

Holland's reliance upon *Gardner* and *Simmons* is thus problematic for several reasons. First, both cases are factually distinguishable from Holland's case. The defendant in *Gardner* was sentenced on the basis of information which *no* jury received and of which the defense was not even aware; the defendant in *Simmons* was essentially prevented from *ever* contesting the State's argument and from alleviating what he showed to be probable jury confusion. Here, no information was ever kept secret from Holland, the court did not prevent Holland from having the opportunity to *ever* contest the State's arguments, and there was no evidence of jury confusion. Moreover, Holland *did* have the opportunity to challenge the fact that he raped King—during the guilt phase of his trial. Neither *Gardner* nor *Simmons* suggests that Holland is constitutionally entitled to a second bite at this apple. Second, the narrowest ground of decision in *Gardner* did not even implicate due process, and that in *Simmons* was specifically limited to demonstration of parole ineligibility in response to the state's argument for a death sentence on the basis of future dangerousness. Third, in neither *Gardner* nor *Simmons* did five Justices agree to the propositions for which Holland cites the cases; accordingly, they are not holdings of the Court and cannot constitute "clearly established Federal law, as determined by the Supreme Court" as required by 28 U.S.C. § 2254(d)(1). *See*

*Jacobsen v. United States Postal Service*, 993 F.2d 649, 655 (9th Cir. 1992); *see also Stevens v. Ortiz*, 465 F.3d 1229, 1237-38 (10th Cir. 2006).

Essentially, Holland's argument premised on *Gardner* and *Simmons* boils down to a contention that Holland has the right to introduce evidence of innocence at sentencing. However, as the Mississippi Supreme Court's opinion denying Holland's second direct appeal thoroughly explains, Holland does not have a clearly established constitutional right to do so. As that court observed, federal courts are split on the issue of whether a defendant may introduce evidence of innocence of a crime of conviction at sentencing. *See Holland II*, 705 So. 2d at 325. Multiple circuits have permitted findings of guilt to estop a defendant in a later proceeding. *See Hernandez-Uribe v. United States*, 515 F.2d 20, 22 (8th Cir. 1975) (holding that there is "no violation of any constitutional right of the defendant" when he is collaterally estopped from denying his alien status on the basis of a prior criminal conviction); *United States v. Colacurcio*, 514 F.2d 1, 6 (9th Cir. 1975) (allowing collateral estoppel to apply against a defendant in a criminal case, and holding that "facts actually decided which were essential to the judgment in [a] prior [criminal] case" may be used against a criminal defendant). Two other circuits, however, have prohibited such use of collateral estoppel against a criminal defendant. *See United States v. Pelullo*, 14 F.3d 881, 896 (3d Cir. 1994), *rev'd on other grounds*, 105 F.3d 117 (3d Cir. 1997); *United States v. Harnage*, 976 F.2d 633, 635-36 (11th Cir. 1992) (rejecting application of collateral estoppel against criminal defendants on the ground that it does not sufficiently promote judicial economy and expressly not reaching any due process implications). Yet another court has recognized that the Supreme Court has never addressed the application of collateral estoppel against a criminal defendant. *Flittie v. Solem*, 775 F.2d 933, 940 (8th Cir. 1985). Indeed, the Mississippi Supreme Court noted that state courts are similarly split on this issue. *See Holland II*, 705 So. 2d at 323-24 (citing cases from various states).

This clear split among federal—and state—courts as to whether a defendant does or does not have a constitutional right to present evidence of innocence at sentencing when such evidence would contravene a prior guilty adjudication indicates that the Mississippi Supreme Court's denial of Holland's claim that he had such a right cannot possibly be "contrary to or involve[] an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1); *cf. McDuffie v. Estelle*, 935 F.2d 682, 689 (5th Cir. 1991) ("Absent binding precedent in this circuit and faced with somewhat conflicting decisions in the two circuits which actually addressed the issue relevant here, we cannot say that the law as set forth by the Ninth Circuit in *Clutchette* was 'clearly established' so as to affect the actions within the Fifth Circuit of the . . . defendants in 1976.").

Furthermore, to the extent that Holland seeks to premise his argument that he has a constitutional right to present evidence of innocence at sentencing upon a right to argue residual or whimsical doubt, his argument fails. Preliminarily, we note that although Holland argued in his second direct appeal that the resentencing court impermissibly prohibited him from introducing evidence of residual or whimsical doubt, he did not raise a similar issue in his amended petition for writ of habeas corpus,[10] and thus we did not grant a COA on this issue. Consideration of the issue, however, is nonetheless relevant. Notably, the Supreme Court has "fail[ed] to recognize a constitutional right to have such doubts considered as a mitigating factor." *Franklin v. Lynaugh*, 487 U.S. 164, 174 (1988) (plurality opinion). In *Franklin*, Justice White, writing for a plurality, explained:

---

[10] *See Holland*, 439 F. Supp. 2d at 672 n.12 ("Holland made many other arguments related to this issue [of whether the court violated his rights by restricting the evidence he could offer at resentencing] in his second direct appeal. However, this Court will consider only the arguments specifically asserted in the Amended Petition. *See Fuentes*[ *v. Dretke*, 89 F. App'x 868, 875 (5th Cir. 2004).]" (citation omitted)).

Finding a constitutional right to rely on a guilt-phase jury's "residual doubts" about innocence when the defense presents its mitigating case in the penalty phase is arguably inconsistent with the common practice of allowing penalty-only trials on remand of cases where a death sentence—but not the underlying conviction—is struck down on appeal. In fact, this Court has, on several previous occasions, suggested such a method of proceeding on remand. Moreover, petitioner himself, in suggesting the appropriate relief in this case, asked only that he be "resentenced in a proceeding that comports with the requirements of *Lockett*"—not that he be retried in full so as to have the benefit of any potential guilt-phase "residual doubts."

In sum, we are quite doubtful that such "penalty-only" trials are violative of a defendant's Eighth Amendment rights. Yet such is the logical conclusion of petitioner's claim of a constitutional right to argue "residual doubts" to a capital sentencing jury.

*Id.* at 173 n.6 (citations omitted).[11]

In light of the fact that the Supreme Court has not recognized a constitutional right to argue "residual doubt" at sentencing, any argument that the Mississippi court erred by not allowing Holland to argue at resentencing that he did not rape King premised upon a right to argue residual or whimsical doubt does not suffice to demonstrate that the court's holding was "contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1).

## D. The Effect of Rape Being Both an Element of Holland's Crime of Conviction *and* an Aggravating Circumstance

Although Holland does not argue that it is improper for an aggravating factor to duplicate an element of capital murder—and such an argument would lack merit—we briefly address the fact of the overlap in this case as it bears on

---

[11] As the Mississippi Supreme Court recognized in Holland's second direct appeal, "[m]ost federal courts generally follow *Franklin*." *Holland II*, 705 So. 2d at 326 (citing *Evans v. Thompson*, 881 F.2d 117, 120 (4th Cir. 1989), and *Coleman v. Saffle*, 869 F.2d 1377, 1393 (10th Cir. 1989)). Moreover, state courts are split on the issue. *See Holland II*, 705 So. 2d at 325 (collecting cases).

our decision. The Supreme Court has explained that "[t]o pass constitutional muster, a capital sentencing scheme must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Lowenfeld v. Phelps*, 484 U.S. 231, 244 (1988) (internal quotation marks omitted). This is the purpose of requiring a jury to find at least one aggravating circumstance before allowing the imposition of the death penalty: "By doing so, the jury narrows the class of persons eligible for the death penalty according to an objective legislative definition." *Id.*

The Supreme Court has long accepted that an aggravating circumstance may duplicate an element of the capital crime of conviction. *See Lowenfeld v. Phelps*, 484 U.S. at 244-46. In *Tuilaepa v. California*, 512 U.S. 967 (1994), the Court further explained the role of aggravating circumstances:

> Our capital punishment cases under the Eighth Amendment address two different aspects of the capital decisionmaking process: the eligibility decision and the selection decision. To be eligible for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment. To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one "aggravating circumstance" (or its equivalent) at either the guilt or penalty phase. The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both). As we have explained, the aggravating circumstance must meet two requirements. First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. *See Arave v. Creech*, 507 U.S. 463, 474 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm"). Second, the aggravating circumstance may not be unconstitutionally vague.

*Id.* at 971-72 (citations omitted). Thus, as long as an aggravating circumstance serves to narrow the class of defendants convicted of murder (and is not

25

unconstitutionally vague), it "may be contained in the definition of the crime [of conviction] *or* in a separate sentencing factor (*or* in both)." *Id.* at 972 (emphases added). The Court's use of the word "or" in this requirement indicates that a jury must find this factor only once to render a death sentence (assuming all other requirements are satisfied). The Court's language clearly indicates that a jury need not find an aggravating circumstance at both the guilt and sentencing phases.[12]

Thus, in this case, Holland's death sentence could stand even if the State had not presented the "rape" aggravating factor to the resentencing jury. Indeed, to satisfy federal constitutional requirements, that jury did not even need to find the existence of the two other aggravating circumstances (the "to avoid arrest" and "especially heinous" circumstances), so long as it did not find sufficient mitigating factors to warrant imposition of a life sentence rather than death: the original jury found the required "aggravating circumstance"—better termed a "narrowing circumstance"—when it found Holland guilty of *capital* murder (as opposed to simply murder). The fact that the court precluded Holland from contesting the rape at resentencing—thereby effectively preventing him from disputing the existence of the "rape" aggravating circumstance—therefore did not prejudice him.

Importantly, the entirety of Dr. McGarry's testimony regarding King's rape and murder was relevant not only to the "rape" aggravator but also to the aggravating circumstance that "the capital offense was especially heinous, atrocious, or cruel." Thus, even had the court not submitted the rape aggravator to the jury, the State would have still been able to introduce Dr. McGarry's testimony in its entirety. The inclusion of the rape aggravator therefore could

---

[12] The rationale underlying this rule is, admittedly, not as strong when a defendant is convicted and sentenced by different juries.

not have prejudiced Holland by allowing testimony to be presented to the resentencing jury that otherwise would not have been.

**E.     Miscellaneous Arguments**

Holland makes two other arguments, both of which lack merit. First, Holland argues that the resentencing court essentially—and improperly—directed a verdict on the issue of whether Holland murdered King during the commission of the crime of rape. However, the court expressly stated that "there would not be a directed verdict granted by the Court." The fact that the court allowed the State to reintroduce evidence from the guilt phase, as expressly permitted by Mississippi state law not challenged here, *see Jackson*, 337 So. 2d at 1256, does not constitute a directed verdict.

Second, Holland argues that it was error for the resentencing court to inform jurors that Holland was eligible for the death penalty. In so arguing, Holland misconstrues the meaning of "death eligibility." As explained above, Mississippi capital punishment cases involve two distinct decisions: the eligibility decision and the selection decision. *See Tuilaepa*, 512 U.S. at 971. Here, the guilt-phase jury made the first decision when it found Holland guilty of capital murder. Based on this finding, Holland became death-eligible. However, the selection decision—whether or not to impose the death penalty for which Holland was eligible—remained. It was this decision that was within the province of the resentencing jury. The question of Holland's *eligibility* for the death penalty was already settled.[13]

---

[13]    Holland further argues in his brief that the district court erred in denying him habeas relief on the ground that he was denied the right to be tried by a fair and impartial jury during the guilt phase of his trial. However, we previously denied Holland's request for a COA on this issue, *see Holland*, 230 F. App'x at 378-80, and therefore lack jurisdiction to consider it, *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" (quoting 28 U.S.C. § 2253(c)(1)) (omission in original)).

## IV. CONCLUSION

For the reasons herein, the Mississippi Supreme Court's denial of Holland's claim for habeas relief was not "contrary to" and did not "involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." Thus, Holland is not entitled to relief under 28 U.S.C. § 2254. We therefore AFFIRM the district court's denial of Holland's request for habeas relief.

AFFIRMED.