**UNITED STATES of America**

v.

**Ronell WILSON, Defendant.**

**No. 04–CR–1016 (NGG).**

United States District Court,
E.D. New York.

July 22, 2013.

Carter H. Burwell, Colleen Elizabeth Kavanagh, Jack Smith, James G. McGovern, Jason Allen Jones, Celia Cohen, Shreve Ariail, United States Attorneys Office, Brooklyn, NY, for United States of America.

Colleen Quinn Brady, The Law Office of Colleen Quinn Brady, David Stern, Robert Soloway, Rothman, Schneider, Soloway & Stern, P.C., Richard Jasper, Law Offices of Richard Jasper, Beverly Van Ness, New York, NY, Michael N. Burt, Law Office of Michael Burt, San Francisco, CA, for Defendant.

## MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, District Judge.

Before the court is Defendant Ronell Wilson's motion in limine to admit statements of Omar Green which state that (1) Wilson said that he "had to shoot" his victims because they "started to pull out on me [i.e. brandish their firearms]," and (2) when asked by Green about the gun Wilson had taken from one of the victims, he said, "See, they were going to rob us." For the reasons set forth below, Wilson's motion is DENIED.

## I. BACKGROUND

The court is currently presiding over Wilson's penalty phase re-trial in which the jury will decide whether he will be sentenced to death or to life in prison without the possibility of release.

Wilson has moved to permit the introduction of two statements he allegedly made to Omar Green, a convicted co-conspirator: (1) When Wilson was washing his hands at Omar Green's apartment shortly after the murders, Green asked, "What the fuck are you doing," to which Wilson replied, "Shit didn't go right. I had to shoot them in the back of their head [sic]. They started to pull out on me"; and (2) when Green asked about the gun Wilson had taken from one of the victims, Wilson stated, "See, they were going to rob us." (Def. Statements Mem. (Dkt. 1386) at 5.) The Government has opposed. (Gov't Statements Opp'n (Dkt. 1397).) Wilson replied. (Def. Statements Reply (Dkt. 1398).)

## II. ADMISSIBILITY OF EVIDENCE AT A CAPITAL PHASE

■■■ Two principles inform the admissibility of evidence at a capital penalty phase. First, the Supreme Court has noted that under the Constitution, "[t]he finality of the death penalty requires a 'greater degree of reliability' when it is imposed." *Murray v. Giarratano*, 492 U.S. 1, 8–9, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (citation omitted); *see also United States v. Fell*, 531 F.3d 197, 207 (2d Cir.2008) (recognizing the "heightened reliability standards required in capital trials"). Similarly, the Federal Death Penalty Act provides that "[i]nformation is admissible

regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). This standard is more restrictive (i.e., it excludes more evidence) than Federal Rule of Evidence 403, which provides that the court may exclude relevant evidence if its probative value is *"substantially"* outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403 (emphasis added); *see also United States v. Fell* (*Fell I*), 360 F.3d 135, 145 (2d Cir.2004).

■ Second, the Supreme Court has indicated that so long as evidence is not unduly prejudicial, "it is desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia*, 428 U.S. 153, 204, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *see also Fell I*, 360 F.3d at 143 ("[T]he Supreme Court has ... made clear that in order to achieve such 'heightened reliability,' *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors ...." (emphasis in original)). Although the jury must not be precluded from "considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death," trial courts retain the "traditional authority" to "exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett v. Ohio*, 438 U.S. 586, 604 & n. 12, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1997) (emphasis removed).

## III. DISCUSSION

Wilson moves to admit certain statements he allegedly made immediately after the murders, which he argues "evidence [his] state of mind." (Def. Statements Mot. (Dkt. 1385); *see also* Def. Statements Mem. at 2.) This motion fails for two reasons.

### A. Conflict With the Guilty Verdicts

■ "[S]entencing traditionally concerns *how*, not *whether*, a defendant committed the crime." *Oregon v. Guzek*, 546 U.S. 517, 526, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006) (emphasis in original). In *Guzek*, the defendant had been found guilty and sentenced to death. *Id.* at 519, 126 S.Ct. 1226. After numerous appeals, the Oregon Supreme Court reversed the death sentence but affirmed the convictions. *See id.* at 519–20, 126 S.Ct. 1226. The defendant sought to introduce at the penalty phase re-trial alibi evidence that he had not presented at the guilt phase. *Id.* at 520, 126 S.Ct. 1226. A unanimous Supreme Court held that the defendant did not have a constitutional right to introduce evidence at the new penalty phase because, in part, "that evidence [wa]s *inconsistent* with Guzek's prior conviction. It shed[ ] no light on *the manner* in which he committed the crime for which he has been convicted." *Id.* at 523, 126 S.Ct. 1226 (emphases in original). In doing so, the Court noted that "the parties previously litigated the issue to which the evidence is relevant—whether the defendant committed the basic crime. The evidence thereby attacks a previously determined matter in a proceeding at which, in principle, that matter is not at issue. The law typically discourages collateral attacks of this kind." *Id.* at 526, 126 S.Ct. 1226.

Based on *Guzek*, numerous courts have forbidden the introduction of evidence at a

penalty phase that calls into question the underlying guilty verdict. For instance, in *Holland v. Anderson*, 583 F.3d 267, 275–76 (5th Cir.2009), the Fifth Circuit affirmed the denial of a writ of habeas corpus where the criminal defendant, who had been convicted of murder while engaged in the commission of a rape, had sought to introduce evidence at the penalty phase that he did not rape the murder victim. *See id.* at 269, 275–80. It reasoned:

> The only testimony and evidence that the court prohibited was that related to an *element* of the crime: the commission of a rape.... [R]ape was an essential element of the original jury's capital murder conviction. Without finding rape, the jury could not have found Holland guilty of capital murder; rape was therefore not a *circumstance* of the crime.... The fact that Holland sought to introduce evidence to dispute an actual element of his crime of conviction— not merely evidence to explain the crime or to describe the circumstances of the crime—distinguishes this case from *Lockett* [*v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ], *Eddings* [*v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ], and their progeny.

*Id.* at 275–76 (footnotes omitted) (emphases in original). Other courts have similarly prevented the introduction of evidence concerning the defendant's innocence at capital penalty phases. *See, e.g., Owens v. Guida*, 549 F.3d 399, 419 (6th Cir.2008) ("[I]n [*Guzek*], the Court unanimously

held that a defendant has no right to present new evidence of his innocence at the sentencing hearing even though the defendant claimed that the evidence related to the 'circumstances of his offense.' "); *Shelton v. Carroll*, 464 F.3d 423, 442 (3d Cir. 2006) (upholding the exclusion of an intended allocution at a capital penalty phase because as the defendant "did not testify at trial, any factual statements about what happened on the night of the murder and his involvement in the crime would have been new evidence not already in the trial record"); *see also Franklin v. Lynaugh*, 487 U.S. 164, 174, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion) (implying that there is no constitutional right to present evidence of "residual doubt" as to a defendant's guilt because "[s]uch lingering doubts are not over any aspect of petitioner's 'character,' 'record,' or a 'circumstance of the offense' "); *Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir.2003) ("The Constitution does not compel state courts to consider residual doubt."). *But see United States v. Pelullo*, 14 F.3d 881, 896 (3d Cir.1994), *rev'd on other grounds*, 105 F.3d 117 (3d Cir.1997); *United States v. Harnage*, 976 F.2d 633, 635–36 (11th Cir.1992).

The statements Wilson purportedly made to Omar Green, like the evidence in *Guzek* and *Holland*, must be excluded because they concern whether Wilson is guilty of the two murders.[1] *See Guzek*, 546 U.S. at 526, 126 S.Ct. 1226; *Holland*, 583 F.3d at 275–76. Wilson seeks to intro-

---

1. Of course, most courts have opined on the propriety of the admission of *alibi* evidence at the penalty phase whereas here, Wilson seeks to introduce statements concerning his "state of mind." This is a distinction without a difference. Courts such as *Guzek* and *Shelton* have forbidden the introduction of alibi evidence at capital penalty phases because it concerns *whether*, not *how*, the defendant committed the crimes. *See Guzek*, 546 U.S. at 528, 126 S.Ct. 1226; *Shelton*, 464 F.3d at 442. If an alibi witness's testimony is credited, then of course the defendant is not guilty. The same is true here: If Wilson believed that his victims were drawing their guns and that he "had to" kill them because they were about to rob him, he may have a viable self-defense justification for the killings, and would not be guilty of the crimes charged.

duce evidence supporting a purported self-defense theory: He told Green that he "had to shoot" the victims because they started to "pull out on him," i.e., draw their weapons; the victim's gun further supported this belief. (*See* Def. Statements Mem. at 2.) This evidence conflicts with the prior jury's verdict finding that Wilson killed the victim's knowingly, intentionally, and without justification. (*See, e.g.,* Dec. 19, 2006, Trial Tr. at 3362:6–8 (defining, in the guilt phase instructions, the element of acting "knowingly" as having acted "purposely and voluntarily and not because of a mistake, accident, *or other innocent reason*" (emphasis added)); *id.* at 3371:23–25 (defining acting "intentionally," which was an element of the murders, as having "acted voluntarily and with the specific intent to do something that the law forbids, that is to say, with the *bad purpose* either to disobey or disregard the law" (emphasis added)).) If Wilson indeed believed that the victims were in the process of drawing their weapons and that he "had to" to shoot them, he may not have acted "knowingly" and "intentionally," as the prior jury found. This evidence, therefore, calls into question the underlying guilty verdicts and has no place at sentencing.[2]

Accordingly, the admission of Omar Green's statements would call the prior jury's guilty verdict into question. For this reason, Wilson's motion to admit such evidence is denied.

**B. Balancing Test of 18 U.S.C. § 3593(c)**

■ Wilson's motion to admit the statements of Omar Green is also denied for the independent reason that such evidence fails the balancing test of 18 U.S.C. § 3593(c).

One may argue that Wilson's statements made to Green do not relate to Wilson's belief that he had to kill the victims in self-defense, but rather that they depict Wilson's state of mind after having committed unjustified murder. In other words, Wilson may have either (1) lied to Green about his need to kill the detectives in self-defense; or (2) honestly, but unreasonably, believed that he had to shoot the victims, in which case Wilson would not have a viable self-defense justification. If so, Green's statements might not concern *whether* Wilson committed the crimes, but would help explain *how* he did so and support his contention that he did not know that his victims were police officers.

Even considering this remote possibility, however, the evidence is inadmissible under 18 U.S.C. § 3593(c). Green's statements are particularly unreliable because he was convicted of perjury for statements he made in *this very case*.[3] Moreover, Green's statements, even if not being of-

---

2. That Omar Green's statements are not yet in the record also supports exclusion. *See Guzek,* 546 U.S. at 526, 126 S.Ct. 1226 ("[T]he parties previously litigated the issue to which the evidence is relevant...."); *Shelton,* 464 F.3d at 442 ("[B]ecause Shelton did not testify at trial, any factual statements about what happened on the night of the murder and his involvement in the crime would have been new evidence not already in the trial record."). Omar Green did not testify at the first trial, and the statements in question were never admitted. Indeed, the Second Circuit affirmed this court's decision to bar some of

these statements because they were not a proper subject of cross examination of Mitchell Diaz. *United States v. Whitten,* 610 F.3d 168, 182–83 (2d Cir.2010).

3. Wilson's essentially argues that *because* Green was convicted of perjury for a different statement he made in this case, his other statements are implicitly reliable. Though clever, this does not overcome the glaring fact that Green pled guilty to lying about the facts of this case.

**402**

fered for their truth, are two levels removed: Wilson seeks to offer documentary proof of what Green said Wilson said. Thus, Green's statements of are extremely limited probative value.

This probative value is severely outweighed by the risk of "confusing the issues[ ] or misleading the jury," 18 U.S.C. § 3593(c), and the court believes that no limiting instruction could suffice. For one thing, during voir dire the court repeatedly instructed the jury that Wilson committed unjustified murder and did not act in self-defense. (*See* Jury Questionnaire (Dkt. 1051) at 10 ("[Wilson] was not ... defending himself ... at the time of the murders."); *see, e.g.,* May 16, 2013, Hr'g Tr. at 2392:11–13 (same).) To expressly contradict that instruction at this stage would mislead the jury.[4] Moreover, admitting Green's statements would inject the issue of self-defense into the trial, and would confuse the issues currently before the jury. The obvious and most reasonable inference from Green's statements is that Wilson believed that he killed the victims in self-defense. Wilson purportedly told Green that he "had to" shoot the victims because they were drawing their weapons, and bolstered this belief by pointing to the victim's gun he recovered. Introducing such evidence would confuse the issues by misleading the jury into focusing on whether Wilson acted in self-defense, an issue completely unrelated to the question before this jury: whether Wilson should be sentenced to death or to life in prison *for the crimes of which he has been found guilty.*

For this reason, Green's statements must be excluded pursuant to 18 U.S.C. § 3593(c).

---

4. Directly contradicting the court's instructions given during the voir dire, as opposed to

## IV. CONCLUSION

Wilson's motion to introduce statements he allegedly made to Omar Green shortly after the murders is DENIED.

SO ORDERED.

omitting information, is impermissible.