# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-70002

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2016

Lyle W. Cayce
Clerk

ROBERT SIMON, JR.,

        Petitioner–Appellant,

v.

MARSHALL L. FISHER, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS,

        Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:11-CV-111

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:*

Death-row inmate Robert Simon Jr. returns to this Court following a federal evidentiary hearing on his competency to be executed and the denial of his petition for habeas corpus. Simon alleges that he suffered a head injury, which has caused significant memory loss, rendering him incompetent to be executed. Simon appeals the denial of his habeas petition, arguing that the

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-70002

district court committed clear error in finding him competent to be executed under the constitutional standards outlined in *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Panetti v. Quarterman,* 551 U.S. 930 (2007).

For the reasons stated below, we conclude that the district court did not commit clear error and therefore affirm the denial of Simon's petition for a writ of habeas corpus.

## I. BACKGROUND AND PROCEDURAL HISTORY

In 1990, Simon was convicted of the murder of three family members in Marks, Mississippi, and sentenced to death.[1] In March 2011, following denial of both state and federal habeas relief, the State of Mississippi moved for the Mississippi Supreme Court to set an execution date. In response, Simon's counsel argued that he was no longer competent to be executed due to a head injury incurred on January 7, 2011.[2] Following a limited review of Simon's competency claim, the Mississippi Supreme Court denied Simon's motion for post-conviction relief and granted the State's motion to set an execution date. Simon's execution was set for May 24, 2011.[3]

Simon then filed a federal habeas petition in the United States District Court for the Northern District of Mississippi on May 13, 2011, challenging the Mississippi Supreme Court's competency proceedings. The district court denied the petition but granted a Certificate of Appealability ("COA"). On March 1, 2012, we held that Mississippi's competency proceedings "r[a]n[] afoul of [Simon's] right to due process," as required by *Ford* and *Panetti*, and

---

[1] A summary of the crime and state court convictions can be found in our prior opinion, *Simon v. Epps*, 344 F. App'x 69, 71 (5th Cir. 2009).

[2] Simon's medical records are sparse and do not actually diagnose Simon with a head injury. Therefore, it is somewhat unclear what, if anything, happened to Simon on or around January 7, 2011.

[3] Details of the alleged injury and a summary of the state court proceedings can be found in this Court's prior opinion, *Simon v. Epps*, 463 F. App'x 339, 340–43 (5th Cir. 2012).

reversed the denial of Simon's habeas petition. Consistent with *Ford* and *Panetti*, we remanded the case for a federal evidentiary hearing on Simon's competency claim.

In anticipation of the hearing, Simon hired neuropsychologist Dr. John Goff to conduct a neuropsychological evaluation of Simon's mental condition. Dr. Goff submitted a report to the district court after conducting an in-person evaluation of Simon and reviewing his medical records, along with the other affidavits filed in this case.[4] Dr. Goff's report found that Simon was exhibiting "global amnesia" and that "he has essentially lost his identity in his amnesia." But Dr. Goff explained that this global amnesia was a "functional condition" not a neurophysiological one, and he could not rule out the potential that Simon was malingering. He explained, "I am not able to determine whether this man is feigning this memory problem or whether he is genuinely convinced that the memory problem exists."

The State of Mississippi hired its own expert, clinical and forensic psychologist Dr. Gilbert S. Macvaugh III. Dr. Macvaugh evaluated Simon in person, conducted interviews with various prison officials about Simon's condition, and reviewed the records and affidavits filed with the district court. Dr. Macvaugh found that Simon was malingering his memory loss, explaining that, "[i]n my opinion, Mr. Simon's current clinical presentation is better explained by his naïve attempts to malinger memory deficits and his rather severe antisocial personality traits."

At the evidentiary hearing, Dr. Macvaugh testified for the State. Dr. Goff did not testify, but Simon presented testimony from his attorneys, Tom Freeland and Forest Jenkins. Both attorneys described an unsettling visit with

---

[4] Dr. Goff had previously submitted an affidavit on Simon's condition in the state court proceedings but had yet to be able to evaluate Simon in person.

No. 15-70002

Simon in March 2011, two months after Simon's alleged head injury, in which he appeared physically weak and unable to comprehend what was happening in his case. Freeland testified that he had represented Simon since approximately 1999 and has visited him in prison about once every 18 months since taking the case. He also testified that not only had Simon been able to understand what was happening in his case during prior visits but that he appeared to no longer even recognize Freeland as his lawyer. Freeland testified further that he has visited Simon three times since the March 2011 meeting, and "[h]e doesn't seem to know any of the history of our interactions and ha[s] only the dimmest idea who I am."

Based on the evidence presented at the evidentiary hearing, the affidavits of various prison employees, a review of Simon's medical and psychiatric records, and supplemental briefing, the district court found that Simon was malingering his memory defects, explaining "that although Simon seems unwilling to acknowledge his crimes and death sentences, his purported memory loss does not prevent him from doing so." Ultimately, the court found that Simon is competent to be executed because "Simon understands his crimes and punishment, and the connection between them" and has a "factual and rational understanding of the punishment he is facing." Based on this finding, the court denied Simon's petition for habeas corpus but granted a COA on whether "he meets the *Ford/Panetti* standard for competence to execute."

## II. DISCUSSION

Federal habeas corpus proceedings are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Holland v. Anderson*, 583 F.3d 267, 271 (5th Cir. 2009). Under AEDPA, to appeal a federal district court's final ruling on a habeas petition that arises out of state court proceedings, the petitioner must obtain a COA. 28 U.S.C. § 2253(c)(1)(A). Because the district

4

court granted Simon a COA on whether he meets the standard for competence to execute, this Court has jurisdiction to address the merits of this appeal.

On federal review of habeas petitions, state court factual findings are typically afforded deference. *See* 28 U.S.C. § 2254(e)(1); *Panetti*, 551 U.S. at 948. But, when a petitioner's due process rights are violated in state competency proceedings, he or she is entitled to an evidentiary hearing in federal district court to resolve the claims de novo. *See Panetti*, 551 U.S. at 948–52; *Ford*, 477 U.S. at 418 (plurality opinion). In federal competency proceedings, application of the correct competency standard is a legal question this Court reviews de novo, while a district court's "ultimate finding of competency" is reviewed for clear error. *Panetti v. Stephens*, 727 F.3d 398, 409–10 (5th Cir. 2013); *see also Wiley v. Epps*, 625 F.3d 199, 204–05 (5th Cir. 2010). Clear error is a deferential standard and "only requires a factual finding to be plausible in light of the record as a whole." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011).

As previously noted, Simon's competency challenge is governed by the Supreme Court's decisions in *Ford* and *Panetti*. In *Ford*, the Supreme Court held that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." 477 U.S. at 409–10. *Ford* set the "federal baseline for competency," *Panetti*, 551 U.S. at 935, but left open the opportunity for states to enact their own competency standards with more rigorous requirements,[5] *Ford*, 477 U.S. at 421–22 (Powell, J., concurring in part and concurring in judgment).

---

[5] For example, in Simon's case, the State of Mississippi's competency statute requires that the inmate be able to aid his attorney in his defense:

> [A] person shall be deemed to be a person with mental illness if the court finds that the offender does not have sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the impending fate that awaits him, and a sufficient

No. 15-70002

The Supreme Court elaborated on *Ford* in *Panetti* but declined to articulate a rule to govern all competency proceedings. *Panetti*, 551 U.S. at 960–61. On remand, this Court interpreted the Supreme Court's *Panetti* opinion to require a "rational understanding" test: "[T]he test for competence to be executed involves not only a prisoner's factual awareness of the crime, the impending execution, and the state's reason for executing the prisoner, but also some degree of 'rational understanding' of the connection between the crime and the punishment," a "causal retributive connection between the two." *Panetti*, 727 F.3d at 406 (quoting *Panetti v. Quarterman*, No. A-04-CA-042-SS, 2008 WL 2338498, at \*31, \*37 (W.D. Tex. Mar. 26, 2008)). Simon does not appeal the legal standard used by the district court but argues that the district court committed clear error in finding him competent under this standard. We conclude it did not.

Similar to *Panetti v. Stephens*, 727 F.3d 398 (5th Cir. 2013), the district court's finding that Simon is competent rests on an evaluation of conflicting expert opinions. *See* 727 F.3d at 410 ("[T]he expert testimony on Panetti's 'rational understanding' of his punishment is conflicting, a circumstance that is probably itself sufficient to sustain the district court's judgment under a clear-error standard."). The district court reviewed the expert reports and testimony in great detail, focusing on the salient fact that "Simon's own expert, Dr. Goff, reported that Simon was either malingering memory deficits or, generously stated, that he could not rule out malingering as an explanation for Simon's behavior." *See Panetti*, 727 F.3d at 411; *cf. Bedford v. Bobby*, 645 F.3d 372, 378–79 (6th Cir. 2011) ("The Supreme Court has never held, much less

---

understanding to know any fact that might exist that would make his punishment unjust or unlawful and *the intelligence requisite to convey that information to his attorneys or the court.*

Miss. Code. Ann. § 99-19-57(2)(b) (emphasis added).

suggested, that the failure to recall precise facts of an offense amounts to the kind of incompetence that prohibits the execution of a defendant."). The district court's reconciliation of the expert's testimony is "entitled to 'great deference' from this Court." *Panetti*, 727 F.3d at 411.

The district court also carefully considered the testimony of Simon's attorneys, noting "no lack of credibility in the testimony of Simon's counsel" but ultimately finding that "insufficient evidence exists to sufficiently corroborate their impressions that Simon appears to have a genuine impairment that would preclude his lawful execution under the relevant legal standards." In light of the record, the district court's assessment of their testimony is not clear error. As noted above, Simon's own expert could not rule out the potential that he was malingering his memory defects, and, due to this fact, he did not testify at the evidentiary hearing. Even after the district court ordered supplemental briefing due to "its concern that the evidence presented by Simon [at the evidentiary hearing] appeared to be sparse," no other testimony or evidence in the record serves to sufficiently corroborate the attorney's impressions of Simon's condition and support his competency claim.

As demonstrated in its thorough opinion, the district court diligently analyzed the other evidence in the record in arriving at its conclusion that Simon's "purported memory loss is feigned." The court carefully reviewed Simon's medical and psychiatric records, prison administrative records, and the affidavits of various prison employees and medical personnel. In particular, the district court pointed to the affidavit of a prison guard that recalled Simon saying, "You know, I had to play my role out, about my head injury, all the way up to my execution, you know." The court highlighted the fact that Simon, or another inmate acting on Simon's behalf, wrote pen pals about his deteriorating mental condition at least two years before the alleged injury even occurred. The court also explained the significance of the fact that Simon

received a book entitled "Diagnostic and Statistical Manual of Mental Disorders" from an unknown source around the time Simon began his competency challenge. In light of this evidence, the district court did not clearly err in finding Simon competent.

Simon argues that the district court erred in relying on the fact that he "did not suffer a mental illness or cognitive deficit for nearly twenty years before the fall and memory loss." A determination of whether a prisoner is competent to be executed is an evaluation of an inmate's current condition as "[p]rior findings of competency do not foreclose a prisoner from proving he is incompetent to be executed because of his present mental condition." *Panetti,* 551 U.S. at 934–35. In Simon's case, the district court simply referenced his lack of prior mental illness to distinguish his case from the facts of *Ford* and *Panetti*: "Unlike Alvin Ford and Scott Panetti . . . Simon has no long and documented history of severe mental illness or delusional thinking through which his current experiences must be filtered in order to resolve questions as to his competency." In *Panetti*, the Supreme Court held that the petitioner's "gross delusions" were a relevant factor that should be considered in determining whether he was currently competent for execution. *Id.* at 960. Therefore, under *Panetti,* were Simon to have a history of mental illness, evaluation of his competency claim would need to take this history into account. But, because Simon has no history of mental illness, there is no history "through which his current experiences must be filtered."

Therefore, based on the district court record and evidence presented at Simon's evidentiary hearing, the district court did not clearly err in its finding that Simon is competent to be executed.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Simon's habeas petition.